**Norma ANTHONY, et al.**

v.

**ABBOTT LABORATORIES, et al.**

**Civ. A. No. 80–0556 S.**

United States District Court,
D. Rhode Island.

June 18, 1985.

Decof & Grimm, Leonard Decof, Mark B. Decof, John Foley, Providence, R.I., for plaintiffs.

Hanson, Curran & Parks, William A. Curran, Dennis J. McCarten, Providence, R.I., for defendant E.R. Squibb & Son, Inc.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This matter is before the court on an elusive and troublesome topic: expert witness fees. And, the posture of the case is such that the court must grapple squarely with the boggart on this occasion. The tale follows.

As part of expedited discovery ordered specially in this case, defendant E.R. Squibb & Sons, Inc. (Squibb) noticed the deposition of one of the plaintiffs' key experts, Paul D. Stolley, M.D., to be taken on April 3, 1985 in Philadelphia, Pennsylvania. The location of the deposition was chosen to suit the convenience of the witness (who is associated with the University of Pennsylvania Medical School). The deposition notice issued on March 21, 1985.

On March 25, 1985, plaintiffs' counsel forwarded a letter stating in substance that Stolley's hourly rate for providing enlightenment at the deposition .would be $420.[1]

---

1. Due to circumstances endemic to Stolley's po- sition at U. Penn., the fee was calculated on the

It is unclear exactly when this billet-doux was received. Squibb's lawyer, after checking with in-house counsel for the defendant, contacted the attorney for the plaintiffs on April 2 to advise that the hourly rate would be challenged. An immediate hearing was conducted in the chambers of Magistrate DeCesaris on April 2, 1985. An order was entered permitting the deposition to go forward without prejudice to Squibb's right to petition the court following the deposition for a determination as to the reasonableness of Stolley's fee. *See* Fed.R.Civ.P. 26(b)(4)(C).

The deposition was taken on April 3, 1985. Thereafter, Stolley submitted a statement which was based upon the quoted rate. Squibb moved to have the court fix a more reasonable (*i.e.,* less generous) basis for compensation. The magistrate issued an order on May 21 denying the request and ordering the defendant to pay Stolley the fee as billed. The magistrate relied in part on his belief (erroneous as matters turned out, *see* text *post*) that defense counsel had been "informed ... of this charge at least 3 weeks prior to the deposition [and] no objection was emposed [sic] until the eleventh hour." This appeal ensued.

■ The appeal is timely under Fed.R. Civ.P. 72(a). The defendant argues, as indeed it must, *see id.,* that the magistrate's order is clearly erroneous and contrary to law. The threshold of the "clearly erroneous" test is high. *E.g., United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."); *B's Co. v. B.P. Barber & Associates, Inc.,* 391 F.2d 130, 132–33 (4th Cir.1968) (even if the reviewing court disagrees with the conclu-

sions reached below, the order should not be set aside unless the court has a firm and definite conviction that a mistake has been made); *cf. United States v. Ven-Fuel, Inc.,* 758 F.2d 741, 763–64 (1st Cir.1985). The test applies with undiminished force to inferences which have been drawn from basically undisputed facts. *Commissioner v. Duberstein,* 363 U.S. 278, 290–91, 80 S.Ct. 1190, 1199–00, 4 L.Ed.2d 1218 (1960); *United States v. United States Gypsum Co.,* 333 U.S. at 394, 68 S.Ct. at 541. As this court has taken pains to point out, the court must refrain from "second-guess[ing] the magistrate on his pre-trial discovery rulings." *Moody v. Fleet National Bank,* C.A. No. 84–0187–S, slip op. at 1 (D.R.I. November 23, 1984).

There are no two ways about it: Stolley's rate is high. And, this court is not so naive as to overlook the strain of esurience which sometimes seems to infect certain physicians when they become involved as experts in the litigation process.[2] Indeed, such a virus is most virulent where, as here, the putative payor is the adverse party. In such straitened circumstances, the ordinary checks and balances are neutralized; and the temptation to honor Mammon, rather than Minos, may become irresistible. There is little question but that this court, viewing the matter de novo, would have been inclined to trim Stolley's pricey sails.

■ But, if the magistrate system is to work effectively, magistrates must be given some latitude to exercise judgment and discretion. The district courts should be slow to interfere in everyday decision-making, lest the floodgates be rent asunder and the efficacy of the system undermined. There is, however, a fine line to be drawn between (unwarranted) meddling and responsible judicial review. *See, e.g., Aggarwal v. Ponce School of Medicine,* 745 F.2d 723, 727 (1st Cir.1984) ("The cask which

basis of the doctor's charge of $350 per hour, plus a $70 override for his employer.

**2.** As a Chinese philosopher put it, in simpler times:

There is no calamity greater than lavish desires....

And there is no greater disaster than greed. *The Way of Lao-tzu* 46 (Wing-Tsit Chan translation).

encases a judge's discretion, though commodious, can be shattered when a reviewing tribunal is persuaded that the [judicial officer] misconceived or misapplied the law...."). Thus, this court must search the record (and its conscience) to ascertain whether "it has a definite and firm conviction that the [magistrate] committed a clear error of judgment in the conclusion [he] reached upon a weighing of the relevant factors." *In re Josephson*, 218 F.2d 174, 182 (1st Cir.1954) (Magruder, C.J.).

Squibb's lament, refined to its barest essence, is that an improper valuation has occurred. The court acknowledges that the magistrate enjoyed more intimate familiarity with this matter on an ongoing basis, Stolley did possess impeccable credentials, the deposition was on rather brief notice, and rates in Philadelphia presumably outstrip those current in Rhode Island. Any fact-intensive doubts must be resolved by the reviewing court in favor of the nisi prius judicial officer. *Ven-Fuel*, 758 F.2d at 764. Then, too, the court is aware that the day has long since passed when physicians were paid by grateful patients in cords of wood or gobs of butter. And, no amount of yearning will restore that more frugal epoch. Nevertheless, these factors, singly and in combination, are in this instance insufficient to carry the day.

█ First, the appellant points out, quite correctly, that the magistrate's finding of perceived corporate tardiness on Squibb's part misconceives the facts. Squibb's counsel did not have 3 weeks' of pre-deposition lead time within which to iron out the imbroglio over fees; he had, at most, 8 days. Given the full panoply of the circumstances, the attorney acted with reasonable diligence in alerting both opposing counsel and the court to the incipient problem. And, after all, the magistrate ordered the deposition to go forward "without prejudice" to the positions of the parties anent witness compensation. It seems strange, therefore, to hold Squibb's timing against it in the subsequent proceeding.

█ Moreover, this court has an abiding conviction that a mistake has been made. Stolley is indeed a well-trained professional who deserves to be compensated for his time accordingly. Perhaps he is, as the plaintiffs contend, "one of only a handful of physicians ... who has the qualifications and expertise to testify concerning the causative effects of diethylstilbestrol." Yet, he cannot be left free, in this sort of proceeding, arbitrarily to saddle his adversary with whatever price tag strikes his fancy. In his last previous deposition appearance, the record reflects that Stolley was content to charge a (friendly) litigant $250 per hour for his time. The subject deposition was held on his home turf. There has been no showing of manifest inconvenience or of consequential loss.[3]

For a person with little or no discernible overhead, a rate of $420 hourly strikes this court as unconscionable. Based on a standard (40 hour) work week, annualization would produce an income to Stolley of $840,000 yearly. He may well be a genius in his field, but this court cannot find that even so important and prestigious a profession as medicine has a right to command such exorbitant rewards. *Cf. Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 955–56 (1st Cir.1984) (Harvard Law School faculty member, acknowledged to be a "widely known and respected professor of constitutional law," *id.* at 955, held not entitled to a rate of $275 per hour). There must be some reasonable relationship between the services rendered and the remuneration to which an expert is entitled; and Stolley's all-that-the-traffic-will-bear approach falls well outside the outer limits of the universe of rationally-supportable awards.

To be sure, we live in an age where a grown man may be paid a seven figure annual salary to dribble a small round ball. But, the forces of the marketplace are at work in such a situation: not only supply and demand, but the variegated effects of the superstar's presence on attendance, television revenues, and the all-hallowed won/lost record. And, most important, the

---

3. The charge-back by his employer, *see* n. 1 *ante,* seems more appropriately treated as a deduction from his fee, rather than an add-on.

employer and the employee square off and bargain at arm's length in order to determine an equitable stipend, each with something to lose and something to gain. In the Rule 26(b)(4)(C) context, however, such factors are noticeably absent; the plaintiffs have handpicked the expert, and the defense has neither options nor bargaining power if it desires to obtain the pretrial discovery which the rule permits. Unless the courts patrol the battlefield to insure fairness, the circumstances invite extortionate fee-setting.

■ In the final analysis, the mandate of Rule 26(b)(4)(C) is not that an adverse expert will be paid his heart's desire, but that he will be paid "a reasonable fee." The ultimate goal must be to calibrate the balance so that a plaintiff will not be unduly hampered in his/her efforts to attract competent experts, while at the same time, an inquiring defendant will not be unfairly burdened by excessive ransoms which produce windfalls for the plaintiff's experts. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1938 n. 4, 76 L.Ed.2d 40 (1983) (counsel fees under 42 U.S.C. § 1988); *Grendel's Den*, 749 F.2d at 950 (same). Decisionmaking in this entropic field must be fair to the parties, equitable vis-a-vis the witness, and comprehensible to the community at large.

Even after due deference is accorded to the magistrate's finding, Stolley's chosen rate is not merely high—it is astronomical. It is so out of touch with the economic realities of the world beyond high-stakes personal injury litigation that it would be a denial of justice to permit it to stand. *Cf. McDonald v. Federal Laboratories*, 724 F.2d 243, 246 (1st Cir.1984) (damages award). Such an extravagant rate offends the conscience of this court, and leaves in its afterglow the unyielding conviction that a mistake has been made. The rate of $250 per hour used by the witness in less luxuriant times is itself extremely munificent, and is, in this court's view, at the outermost periphery of the range of sustainable awards.

Our citizens' access to justice, which is at the core of our constitutional system of government, is under serious siege. Obtaining justice in this modern era costs too much. The courts are among our most treasured institutions. And, if they are to remain strong and viable, they cannot sit idly by in the face of attempts to loot the system. To be sure, expert witness fees are but the tip of an immense iceberg. But, the skyrocketing costs of litigation have not sprung full-blown from nowhere. Those costs are made up of bits and pieces, and relaxation of standards of fairness in one instance threatens further escalation across the board. The effective administration of justice depends, in significant part, on the maintenance and enforcement of a reasoned cost/benefit vigil by the judiciary.

The magistrate's order of May 21, was clearly erroneous. The rate of compensation allowed thereby was overgenerous. The appeal is sustained; the magistrate's ruling is modified to require payment by Squibb to Stolley at the rate of $250 per hour.

The appellant shall make remittance forthwith in accordance with the foregoing.

*So ordered.*