Jeffrey T. JOCHIMS, Plaintiff,

v.

ISUZU MOTORS, LTD., Defendant.

No. 3–89–CV–70109.

United States District Court,
S.D. Iowa,
Davenport Division.

March 25, 1992.

Steven J. Crowley of Bauer, Schulte, Hahn, Swanson & Crowley, Burlington, Iowa, for plaintiff.

John Q. McShane of Bowman & Brooke, Minneapolis, Minn., for defendant.

## ORDER

BENNETT, United States Magistrate Judge.

This matter is before the court on the increasingly troublesome question of the reasonableness of the fee charged by an adverse expert witness to the opposing party for the expert's deposition. Plaintiff Jochims retained expert witness, Dr. Andrezj Nalecz, and is seeking compensation for his deposition at an hourly rate of $500.00 from Defendant Isuzu Motors, Ltd.[1]

## I. FACTUAL BACKGROUND.

This is a products liability suit in which Plaintiff alleges that a 1986 Isuzu Trooper II motor vehicle rolled over causing Plaintiff severe injury. The $500.00 per hour request is made for Plaintiff's primary liability expert, Dr. Andrezj Nalecz. Dr. Nalecz is an associate professor of mechanical and aerospace engineering at the University of Missouri. Dr. Nalecz's professional qualifications and credentials are indeed impressive—particularly in the area of motor vehicle aerodynamics and computer simulation. Plaintiff claims and Dr. Nalecz concurs that he is an internationally known expert in vehicle systems dynamics, crash avoidance research and computer simulation programs.

The Plaintiff has already paid Dr. Nalecz over $40,000.00 for his services, including preparation and development of a computer simulation/analysis of the rollover accident which injured the Plaintiff. Dr. Nalecz is charging the Plaintiff an hourly rate varying from $150.00 to $250.00, depending upon the type of activity and when it was performed. Plaintiff asserts that Dr. Nalecz's request for $500.00 per hour for his deposition is based upon several factors. Dr. Nalecz has not previously given a deposition but recognizes that his deposition in this case is critically important; his deposition is highly technical; and Dr. Nalecz also believes the deposition will be stressful. Finally, Dr. Nalecz asserts that he will need to engage in thoughtful preparation prior to his deposition.[2]

## II. ANALYSIS.

Fed.R.Civ.P. 26(b)(4) authorizes the discovery of "facts known and opinions held by experts...." Section 26(b)(4)(C) specifically provides: "[u]nless manifest injustice would result, (i) the court *shall* require the party seeking discovery pay *the expert* a reasonable fee for time spent in responding to discovery ..." (emphasis supplied.) "The purpose of the rule is to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 879 (9th Cir.1986); *Hurst v. United States*, 123 F.R.D. 319, 321 (D.S.D.1988) ("[T]he goal of Rule 26(b)(4)(C) is to compensate experts for their time in participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's ex-

---

**1.** In addition to his requested fee of $500.00 per hour, Dr. Nalecz is requesting a two hour minimum and an hourly rate of $150.00 plus expenses for travel time. The court need not address the two hour minimum requirement or the travel time issue. First, the parties have voluntarily scheduled Dr. Nalecz's deposition in Columbia, Missouri, his residence. The two hour minimum does not appear to be at issue in that the parties have scheduled Dr. Nalecz's deposition for two days. Given the court's experience with the depositions of expert witnesses, it is doubtful that the two hour minimum will often be a serious issue. That issue will be left for another day should a short-winded, succinct-questioning lawyer choose to raise it.

**2.** The question of whether or not the opposing party is required to compensate Dr. Nalecz for his preparation for his deposition is not before the court. The parties have agreed that the Defendant will not be responsible for Dr. Nalecz's time in preparing for his deposition.

pert work free from cost."). *See also 4 Moore's Federal Practice* ¶ 26.66[5] (2d ed. 1985). "The language of the rule is mandatory ('shall'), unless manifest injustice would result." *City of Twin Falls, Idaho,* 806 F.2d at 879.

The Advisory Committee's Notes to *Fed. R. Civ. P.* 26(b)(4)(C) shed little light on the question of what a reasonable fee is for an expert witness. The Advisory Committee Notes state:

Under subdivision (b)(4)(C), the court is directed or authorized to issue protective orders, including an order that the expert be paid a reasonable fee for time spent in responding to discovery, and that the party whose expert is made subject to discovery be paid a fair portion of the fees and expenses that the party incurred in obtaining information from the expert. The court may issue the latter order as a condition of discovery, or it may delay the order until after discovery is completed. These provisions for fees and expenses meet the objection that it is unfair to permit one side to obtain without cost the benefit of an expert's work for which the other side has paid, often a substantial sum.

*Fed. R. Civ. P.* 26(b)(4)(C) advisory committee's note, 1970 amendment.

Unfortunately, there is a paucity of decisions on this question. The only authority relied upon by the Defendant is *Anthony v. Abbott Lab.,* 106 F.R.D. 461 (D.R.I.1985). Plaintiff cites no authority. In *Anthony,* the court held that plaintiff's medical expert was not entitled to compensation at an hourly rate of $420.00 for giving a deposition. The court based its decision, in part, on the fact that in his last previous deposition appearance the expert was content to charge a friendly litigant $250.00 per hour. *Id.* at 464. The court found that an hourly rate of $250.00 was "at the outer-most periphery of the range of sustainable awards." *Id.* at 465.

In *Draper v. Red·Devil, Inc.,* 114 F.R.D. 46 (E.D.Ark.1987), the court reduced the hourly rate of an expert electrical engineer from $120.00 to $110.00 per hour. This was because the expert charged the Plain-

tiff $110.00 per hour and imposed a $10.00 "surcharge" on the opposing party. *Id.* at 48. The court noted that there was no basis in the record for the unexplained surcharge. *Id.* The court also observed that "[b]y analogy, reasonable attorney fees in civil rights cases awarded under 42 U.S.C. § 1988 are calculated according to the prevailing market rates in the relevant community." *Id.*

In *Goldwater v. Postmaster General of the United States,* 136 F.R.D. 337 (D.Conn. 1991), the court held that the reasonable fee for a psychiatric expert in an employment discrimination claim was $200.00 per hour rather than the alternative hourly fees requested of $450.00 or $350.00. The court correctly observed that "[t]here is very little authority as to what is meant by the term 'a reasonable fee' in Rule 26(b)(4)(C)." *Id.* at 339. The court in *Goldwater* then observes that "most courts acknowledge the paucity of authority and then use their discretion to select an amount deemed reasonable." *Id. (citing Hurst,* 123 F.R.D. at 321).

■ This court agrees with the court in *Goldwater* that "[w]hat little authority does exist does not supply the court with much guidance ..." in determining a reasonable fee for an expert witness. *Id.* at 339. The court in *Goldwater* noted that courts that have considered this issue "have generally failed to delineate all of the factors that they necessarily weighed in determining whether a particular fee was reasonable." *Id.* The court then went on to delineate the following six factors in determining whether a particular expert witness fee is reasonable within the meaning of *Rule* 26(b)(4)(C):

(1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living in the particular geographic area; and (6) any other factor likely to be of assistance to the court in

balancing the interests implicated by Rule 26.

*Id.* at 340. The court also stated that "[t]he weight to be given any one of the factors in a particular case depends, of course, on the circumstances before the court." *Id.*

This court agrees with the formulation in *Goldwater*, with the exception of the fifth factor. The court does not believe that the cost of living in a particular geographic area is directly relevant to a reasonable fee and, in any event, this factor is frequently, at least indirectly, calibrated into prevailing market rates. Moreover, this court would add to the five remaining factors, the following factors: (1) the fee actually being charged to the party who retained the expert; and (2) fees traditionally charged by the expert on related matters.[3] In an effort to persuade the court of the reasonableness of Dr. Nalecz's requested fee, Plaintiff has provided voluminous background information concerning Dr. Nalecz's education and professional expertise. Dr. Nalecz has taught, lectured, written, published and consulted extensively in his area of expertise. Indeed, he has been a consultant to the U.S. Department of Transportation as well as to several major foreign and domestic manufacturers of motor vehicles. Dr. Nalecz is president of Vehicle Dynamics International, whose literature describes Dr. Nalecz "as an internationally known expert in vehicle systems dynamics, vehicle active safety and stability, and tire mechanics." Additionally, this information states that "Dr. Nalecz is also known for performing state-of-the-art research in the development of new methods for use and analysis in synthesis of vehicle dynamic systems ... these methods and models have been used to perform state-of-the-art research in vehicle mechanics and crash avoidance." In sum, the Plaintiff states that "Dr. Nalecz is the leading authority in the United States based on his research into vehicle rollover and computer analysis of vehicle dynamics leading to rollover."

The Defendant, not surprisingly, is less impressed by Dr. Nalecz. The Defendant rather likes its own liability expert, Dr. Cooperrider, who is charging the Defendant a mere $235.00 per hour.

■ Consideration of the delineated factors leads the court to the inescapable conclusion that Dr. Nalecz's requested hourly rate of $500.00 is grossly excessive—or as the court described the requested fee in *Anthony* "unconscionable" and "astronomical". *Anthony,* 106 F.R.D. at 464–65. It is double the highest hourly rate he is charging the Plaintiff—and there is absolutely no indication in the record that he has charged and been paid this hourly rate in any of his consulting or other services as an expert witness. Subjective concerns and fears about the stress of a painstaking and carefully taken deposition by a skilled adversary—while perhaps justified—do not on this record support an enhancement of Dr. Nalecz's hourly rate by a factor of two.

---

**3.** The court believes that the analogy to "reasonable fees" determined by the courts in the context of civil rights actions, and other fee shifting statutes, and endorsed by the court in *Draper v. Red Devil, Inc.,* 114 F.R.D. 46 (E.D.Ark.1987), is a helpful one. In *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the court noted that "reasonable fees" under § 1988 are "to be calculated according to the prevailing market rates in the relevant community...." *Id.* at 895, 104 S.Ct. at 1547. The court observed that determining the appropriate "market rate" for the services of a lawyer is "inherently difficult." *Id.* at 895 n. 11, 104 S.Ct. at 1547 n. 11. The court noted that in establishing the reasonableness of the requested hourly rate, it is important to determine if the rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896 n. 11, 104 S.Ct. at 1547 n. 11. Of course, in many cases, for obvious reasons, the "community" would be much broader for expert witnesses than for attorneys. It is, however, the "market rate" based in part upon what other comparable expert witnesses charge that appears to be a critical factor. An analysis premised upon "market rates" raises the very real specter that the whatever-the-market-will-bear approach of some experts will convert their greed into a reasonable fee. The language of *Fed.R.Civ.P.* 26(b)(4)(C) imposes an independent obligation upon the court, notwithstanding "market rates", to determine the reasonableness of a requested fee.

It is conceded by the parties to this litigation that Dr. Nalecz is entitled to a reasonable fee. However, Dr. Nalecz "cannot be left free, in this sort of proceeding, arbitrarily to saddle his adversary with whatever price tag strikes his fancy." *Anthony*, 106 F.R.D. at 464.[4] Applying the factors discussed earlier, the court determines that $250.00 an hour is the outer limit of a reasonable fee for Dr. Nalecz. This is the current rate he is charging the Plaintiff for the most difficult work performed for him and is $15.00 per hour more than the fee being charged the Defendant by its own liability expert.

Continuing escalation of expert witness fees and the all too frequent attitude of experts that their fees should be set at the maximum-the-traffic-will-bear is of great concern. The escalating cost of civil litigation runs the grave risk of placing redress in the federal courts beyond the reach of all but the most affluent. Judge Selya[5] eloquently stated this position nearly seven years ago in *Anthony*, when he stated:

> Our citizens' access to justice, which is at the core of our constitutional system of government, is under serious siege. Obtaining justice in this modern era costs too much. The courts are among our most treasured institutions. And, if they are to remain strong and viable, they cannot sit idly by in the face of attempts to loot the system. To be sure, expert witness fees are but the tip of an immense iceberg. But, the skyrocketing costs of litigation have not sprung full-blown from nowhere. Those costs are made up of bits and pieces, and relaxation of standards of fairness in one instance threatens further escalation across the board. The effective administration of justice depends, in significant part, on the maintenance and enforcement of a reasoned cost/benefit vigil by the judiciary.

*Anthony*, 106 F.R.D. at 465. Judge Selya's concerns are even more acute now than when he wrote them in 1985.[6] Indeed, Congress recently passed the Civil Justice Reform Act of 1990, 28 U.S.C. § 471 *et seq.* This legislation mandates that each federal district court, after study by an advisory group, implement a plan to reduce the expense and delay in civil litigation in federal courts by providing for just, speedy and inexpensive resolution of civil disputes. 28 U.S.C. § 471.

The court has no trouble reducing Dr. Nalecz's requested fee from $500.00 to $250.00 per hour. This is based upon the application of the appropriate factors previously identified. Dr. Nalecz's requested fee of $500.00 per hour is an unfortunate example of the concerns expressed by the courts and Congress regarding the escalating costs of civil litigation in the federal courts. Exorbitant requests by expert witnesses for fees may be the tip of an immense iceberg. However, the time has come to halt further escalation of these excesses.

Pursuant to *Fed.R.Civ.P.* 26(b)(4)(C), it is ordered that the Defendant pay Plaintiff's retained liability expert, Dr. Nalecz, $250.00 per hour as a reasonable fee for his deposition testimony.

IT IS SO ORDERED.

---

**4.** Based on a standard (40 hour) work week, Dr. Nalecz would earn $1,000,000 a year at his requested hourly rate. "He may well be a genius in his field, but this court cannot find that even so important and prestigious a profession ... has a right to command such exorbitant rewards." *Anthony*, 106 F.R.D. at 464.

**5.** Judge Selya was elevated to the United States Court of Appeals for the First Circuit in October, 1986.

**6.** *See generally* The Congressional Statement of Findings of the Civil Justice Reform Act of 1990, § 102 of Pub.L. 101–650 and the legislative history at 1990 U.S.Code Cong. and Adm.News, p. 6802.