Jesus H. DOMINGUEZ, Plaintiff,

v.

SYNTEX LABORATORIES, INC., Defendant.

No. IP 90–152–C.

United States District Court, S.D. Indiana, Indianapolis Division.

May 14, 1993.

---

Henry J. Price, Mary J. Hoeller, Price & Barker, Indianapolis, IN, for plaintiff.

Ralph A. Cohen, Kevin R. Knight, Ice, Miller, Donadio & Ryan, Indianapolis, IN, for defendant.

### ENTRY ON DETERMINATION OF REASONABLE EXPERT WITNESS FEES

ENDSLEY, United States Magistrate Judge.

Upon submission of evidence at a hearing on April 15, 1993, the matter of determining "a reasonable fee" for an expert witness is before the Court for application of Rule 26(b)(4)(C)(i) of the Federal Rules of Civil Procedure (hereinafter "Rule"). Rule 26(b)(4)(C) states in part: "Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule; ..." Fed.R.Civ.P. 26(b)(4)(C).

"There must be some reasonable relationship between the services rendered and the remuneration to which an expert is entitled...." *Anthony v. Abbott Laboratories,* 106 F.R.D. 461, 464 (D.R.I.1985). Under *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493, 495 (S.D.Iowa 1992), there are seven factors a court is to consider in determining the reasonableness of an expert's fee: (1) "the witness's area of expertise"; (2) "the education and training that is required to provide the expert insight which is sought"; (3) "the prevailing rates of other comparably respected available experts"; (4) "the nature, quality and complexity of the discovery responses provided"; (5) "the fee actually being charged to the party who retained the expert"; (6) "fees traditionally charged by the expert on related matters"; and (7) "any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26." *Jochims,* 141 F.R.D. at 435–436.

### Facts

Doctor Hirsch, a neurologist who specializes in smell and taste disorders, has billed defendant for four (4) hours at $800 per hour; and for four (4) hours at $860 per hour. This was for time spent at a deposition taken on May 22, 1992 and October 12, 1992, in Chicago, Illinois (near Dr. Hirsch's office). Defendant's law firm paid Dr. Hirsch $6,640 but preserved its right to challenge the fee. Defendant claims the fees charged by Dr. Hirsch for his deposition testimony are unreasonable and excessive.

No live testimony was given at the evidentiary hearing. Defendant submitted evidence of fees charged by seven doctors from around the country. The doctors specialize in the fields of smell and taste disorders, drug research, allergies, or otolaryngology. The maximum fee for deposition testimony from those doctors is $300 per hour (Dr. Mott). Two doctors and two attorneys indicated they knew other unnamed doctors who charged $350 per hour.

Plaintiff's evidence comes from Dr. Hirsch and two attorneys in the same firm as plaintiff's counsel. The records of Dr. Hirsch show he has charged three other clients $860 per hour for deposition testimony (November 3, 1992, January 13, 1993, November 4, 1992, January 15, 1993, and March 15, 1993), and billed one deposition at $890 per hour (April 1, 1993). Doctor Hirsch billed attorney meetings at $500 per hour (June 29, 1992),

$683 per hour (March 15, 1993), and $341.50 per hour (April 1, 1993). For reviewing medical records, Dr. Hirsch charged other clients $460 per hour (August and September, 1992; February and March, 1993). During a similar time period (October 15, 1992 to January 13, 1993), Dr. Hirsch billed a constant $94 per hour for all patient office visits.

The two attorneys submitted affidavits with one claiming to have been billed by one Indianapolis doctor (specialty unknown) at $750 per hour (regardless of the service rendered) and to know of other doctors (specialties unknown) who bill $1,000 per hour for depositions. The other attorney claims to know of doctors (again, specialties unknown) who charge $500 per hour for depositions. Since the affidavits gave no names, the Court inquired as to the doctors' identities. Later that day, plaintiff supplemented his evidence with a list of doctors but failed to indicate the specialties [1] and who charged what rates. Also omitted were the addresses of all but four of the doctors.

Doctor Hirsch has billed plaintiff $600 per hour (March 18, 1992) and $660 per hour (May 22, 1992) for attorney meetings. For record reviews, Dr. Hirsch has billed plaintiff $375 per hour (December, 1991), and $460 per hour (April and May, 1992). A "FEE SCHEDULE FOR ATTORNEYS" from Dr. Hirsch dated January 15, 1992, lists depositions at $800 per hour, attorney meetings at $600 per hour, and record reviews at $375 per hour. In his deposition, Dr. Hirsch stated record reviewing rates vary from "a low of $200 to maybe $260 for an hour something or $300 per hour." Hirsch Depo. p. 27–28.

The evidence concerning Dr. Hirsch's overhead is lacking. There is no evidence as to what the doctor's actual overhead expenses are. The statements of plaintiff's attorneys at the hearing and in the briefs indicate Dr. Hirsch's overhead is higher than other similar experts because he operates out of his own clinic while others use university facili-

ties. Defendant's counsel stated at the hearing he believed some of his experts had to reimburse the universities for certain expenses of private work done at the university. No actual evidence was submitted in support of either statement. No evidence has been submitted showing overhead to be higher in Chicago, Illinois, than in Rhode Island, Pennsylvania, Connecticut, or Indiana (the location of the other doctors).

## DISCUSSION

### Reasonable Fee for Expert Deposition Testimony

■ The *Jochims* factors will be analyzed in related groups. The weight to be given any single factor depends on the circumstances before the court. *Goldwater v. Postmaster General of the United States*, 136 F.R.D. 337, 340 (D.Conn.1991).

#### 1. Witness's area of expertise and education and training

The Court finds a comparison of Dr. Hirsch and Dr. Mott to be beneficial. Both are physicians employed at centers specializing in taste and smell.[2] Each has additional areas of expertise that enhance the value of their analysis and opinions. Dr. Hirsch obtained his M.D. from Michigan in 1976; Dr. Mott obtained her M.D. from Michigan State in 1977. Both teach medical school classes. Both have done research concerning medical subject matter similarly important to this case. Dr. Hirsch has been published more than Dr. Mott. Dr. Hirsch has indirectly referred to Dr. Mott as one of "the gurus of chemosensation." Dr. Hirsch charges $860 per hour for depositions. Dr. Mott charges $300 per hour. Looking at these two factors in isolation, Dr. Hirsch's expertise and training do not justify over two and one-half times the hourly rate of Dr. Mott.

---

1. The Court's own cursory inspection of the Indianapolis telephone yellow pages found only one of the sixteen names plaintiff submitted in support of the attorney affidavits. Karl Manders, M.D., specializes in neurological surgery.

2. Plaintiff's unsubstantiated claim that Dr. Hirsch "sees more patients with smell and taste disorders than any other center in the United States and perhaps the entire world" and that this makes him uniquely qualified, merits no weight.

### 2. Prevailing rates of other similar experts

To put it bluntly, no doctor with similar expertise charges as much as Dr. Hirsch. In fact, no similar doctor comes close. Plaintiff makes only vague reference to unnamed doctors of unnamed specialty who are alleged to regularly earn $500 to $1,000 per hour for deposition testimony. This is not enough to overcome defendant's evidence that another top doctor (Dr. Mott) in the same field as Dr. Hirsch earns only $300 per hour—or some evidence unnamed doctors may earn $350 per hour. Other experts in fields relevant to this case earn even less: $120 to $250 per hour. The only trustworthy evidence of similar experts (where name, specialty, background, rate charged and location of practice are given in an affidavit by attorney or doctor) before the court indicates the maximum possible reasonable fee is $300 per hour if "reasonableness" were determined solely on this factor.

### 3. Nature, quality and complexity of discovery responses

Neither side has focused on this factor, and based on what little deposition testimony was provided, the Court discerns no substantial difference in Dr. Hirsch's responses from those given by other experts.

### 4. Fees traditionally charged and fees actually charged to plaintiff

In determining the fees the expert traditionally charges, the court looks at both the expert's fee schedule and the fees actually charged to other clients for similar services. This is a temporal categorical analysis rather than a comparative one amongst the various types of services. For deposition testimony Dr. Hirsch has billed others $860 to $890 per hour. The only fee schedule submitted indicates depositions are $800 per hour. The evidence does not show Dr. Hirsch billing plaintiff for depositions, therefore the Court will analyze charges on other services.

For attorney meetings, others have been billed at $341.50, $500 and $693 per hour. The doctor's fee schedule sets a rate of $600 per hour. Plaintiff was billed $600 and $660 per hour.

For reviewing records, Dr. Hirsch charged others $460 per hour. His fee schedule set the rate at $375, but his deposition testimony stated $200 to $300 per hour. Plaintiff was charged rates of $375 and $460 per hour.

The doctor's rates vary dramatically, but plaintiff was consistently billed at the higher end. Based on these two factors, Dr. Hirsch seems to merit a higher fee. However, for reasons set out below, the Court gives less weight to these two factors.

### 5. Other factors assisting the balancing of interests

Dr. Hirsch rests his justification of higher fees on higher fixed overhead. Overhead may justify a minimum rate for any service rendered, but it does not justify the striking difference in rates charged for different services. The Court notes the wide range of prices charged by Dr. Hirsch for services presumably requiring the same overhead expense. If the overhead is covered by $341.50 per hour for attorney meetings, overhead can hardly be the justification for $860 or $890 per hour for depositions. More telling is the $94 rate charged for patient office visits, which presumably cost more to conduct than a visit with an attorney. Furthermore, the $94 per hour for patient visits never varied during the relevant time period. The other rates vacillated (mostly upward) dramatically. There is no evidence to justify price increases or different rates for similar services. Such lack of logical basis for the range in rates and for the increase in rates breaks the restraints of reasonableness.

Apparently the litigious nature of society has caused litigation participants to forget the adage "an honest day's work for an honest day's pay." As one court put it: "[T]his court is not so naive as to overlook the strain of esurience which sometimes seems to infect certain physicians when they become involved as experts in the litigation process." *Anthony,* 106 F.R.D. at 463.[3] "Continuing escalation of expert witness fees and the all

---

**3.** *Anthony,* 106 F.R.D. at 464–465 provides a good explanation of how exorbitant sports salaries do not compare.

too frequent attitude of experts that their fees should be set at the maximum-the-traffic-will-bear is of great concern." *Jochims,* 141 F.R.D. at 497.

Defendant generously offers $300 per hour as a reasonable fee. Weighing the factors, the Court determines a reasonable fee for Dr. Hirsch is $341.50 per hour for the eight (8) hours of deposition time given in this case. The Court recognizes this rate as a great deal higher than an award given under Rule 26(b)(4)(C) by any other Court.[4] However, if $300 per hour for a doctor with overhead partially covered by a university is a reasonable fee as defendant concedes, Dr. Hirsch deserves a somewhat higher rate due to his private clinic practice. The Court accepts this to justify the difference between $300 and $341.50 per hour. Eight (8) deposition hours billed at $341.50 per hour results in a reasonable fee of $2,732.

Regarding payment, plaintiff claims a "reduction in Dr. Hirsch's fees by this Court would do nothing in regard to deescalation of litigation costs but would, to the contrary, merely shift the cost of services requested by Syntex (the deposition) to Dominguez...." Plaintiff's brief, p. 7. The Court knows of no authority for Dr. Hirsch to bill Dominguez for the deposition taken by Syntex. The deposition at issue is purely an arrangement between Syntex and Dr. Hirsch, and absent some contractual arrangement, Dominguez owes no duty to reimburse Dr. Hirsch for any amount over the reasonable fee set by the Court. The rule plainly requires defendant to pay the expert, not plaintiff. Fed. R.Civ.P. 26(b)(4)(C)(i) ("the court shall require that the party seeking discovery pay the expert a reasonable fee"); *Bosse v. Litton Unit Handling Systems,* 646 F.2d 689, 695 (1st Cir.1981) ("It was defendant, however, who took their depositions.... [T]hey were not then plaintiff's witnesses at that time, but were called by defendant, and de-

fendant, not plaintiff, is the one under whatever may be the obligation. F.R.Civ.P. 26(b)(4)(C)(i).") This case is not like *Saviour v. City of Kansas City,* 1992 WL 401966 (D.Kan.1992) where counsel for plaintiff had already advanced the fee, and defendants were ordered to pay the amount to plaintiff; nor is it like an allocation of costs under Rule 26(b)(4)(C)(ii). *Cataline v. Raymark Industries, Inc.,* 103 F.R.D. 447, 452 (S.D.Fla. 1984). The expert witness fee may not be billed to the attorneys either. *Sampson v. Orkin Exterminating Company, Inc.,* 124 F.R.D. 631, 634 (N.D.Ind.1989).

For the reasons set forth, Dr. Hirsch is hereby ORDERED to reimburse defendant's counsel the Three Thousand Nine Hundred Eight Dollars ($3,908.00) paid over and above the amount of a reasonable fee for deposition testimony as determined by the Court.

### Reasonable Fee for Production of Documents by Expert

■ Based on the same reasoning as above, defendant also moves for a determination of a reasonable fee for Dr. Hirsch to retrieve documents requested.[5] No independent evidence was presented by either party on this issue. As pointed out in the previous entry, defendant finds it ridiculous that Dr. Hirsch must personally review every single document in his file because of no computerization of records and the doctor's illegible handwriting. Defendant claims Dr. Hirsch's fees, $460 per hour for six (6) hours, for record retrieval "are not based on his alleged expertise, but on his inefficient filing system." Defendant Reply Brief, p. 2. No one asserts otherwise. The doctor is asking defendant not to pay for his medical skills, but for his personal clerical skills (which are clearly not as good). As cited earlier, there must be a reasonable relationship between the fee and the services rendered. *Anthony,*

---

4. Previously, the most awarded any expert under Rule 26(b)(4)(C) in a published opinion was $250 dollars an hour. *See Jochim* 141 F.R.D. 493; *Anthony,* 106 F.R.D. 461.

5. Rule 26(b)(4)(A) is unclear whether documents are requested from plaintiff through Rule 34, or if they are requested directly from Dr. Hirsch under Rule 45. Defendant has not made clear

the form of discovery used. Either way, a motion to compel is appropriate, *see* Fed.R.Civ.P. 34(c), but the form of the request is relevant in determining the remedy or sanction for failure to respond. A Rule 34 request to a party could involve sanctions of the type sought. A Rule 45 sanction focuses on the non-party and not the party.

106 F.R.D. at 464. The doctor is not doing work which requires a medical degree; accordingly, he should not be paid as such. *See, LeRoy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir.1990) ("hourly rates near the top of the scale will ... be inappropriate if in the particular context the task could have been properly accomplished with greater overall cost efficiency by competent personnel...."); *Cantaline v. Raymark Industries Inc.*, 103 F.R.D. 447, 453 (S.D.Fla.1984) (costs were reduced where attorney's efforts were purely administrative and clerical and did not require any legal training). Furthermore, defendant is correct in stating the case law is clear it need not pay for Dr. Hirsch to "review" the medical records prior to the discovery. *Rhee v. Witco Chemical Corp.*, 126 F.R.D. 45, 46 (N.D.Ill.1989).

Defendant has convinced the Court Dr. Hirsch's fee for producing documents is unreasonable. On its face, $460 an hour for clerical work is unreasonable. A reasonable fee would be the same gross hourly rate Dr. Hirsch or his clinic pays his own medical records staff (clerical office workers as opposed to medical staff). Dr. Hirsch, or his agent, shall set out in an affidavit, or provide other evidence of, the gross hourly rate at which his office staff is paid, and submit such evidence to defendant by May 19, 1993. Defendant shall issue payment on May 20, 1993, to Dr. Hirsch for an amount six (6) times the hourly rate quoted. In all events, the documents requested shall be produced by May 21, 1993; otherwise, appropriate sanctions will be issued against plaintiff and/or Dr. Hirsch.

**IT IS SO ORDERED.**