2004 OK CIV APP 51

**Jewell A. DYER, Plaintiff/Appellant,**

v.

**EMERGENCY CARE, INC., an Oklahoma corporation, and Mark Brandenburg, M.D., Defendants/Appellees,**

and

**Saint Francis Hospital, an Oklahoma corporation, Defendant.**

**No. 97,917.**

Court of Civil Appeals of Oklahoma, Division No. 3.

May 7, 2004.

*Matter of B.M.O.*, 1992 OK CIV APP 89, 838 P.2d 38.

Glenn R. Beustring, Glenn R. Buestring & Associates, and Joan Godlove, Tulsa, OK, for Plaintiff/Appellant.

William A. Fiasco, Marthanda J. Beckworth, Atkinson, Haskins, Nellis, Holeman, Phipps, Brittingham & Gladd, Tulsa, OK, for Defendants/Appellees.

Opinion by CAROL M. HANSEN, Judge:

¶ 1 In this action which was tried on issues of medical negligence,[1] Appellant, Jewell Dyer (Dyer), appeals from the trial court's order disposing of [a] the parties' post-trial opposing motions to compel the other to pay the fees of experts who testified live at trial, and [b] Dyer's post-trial motion seeking an order to require one of those experts to "disgorge" part of the fee Dyer paid for his deposition during discovery. The trial court found against Dyer and in favor of Appellees, Emergency Care, Inc. and Mark Brandenburg (collectively Appellees), as to all motions.

¶ 2 During the discovery phase of the case, Dyer identified Dr. Cary Bartlow (Bartlow) as a retained expert to testify on a "Life Care Plan" for Dyer and regarding future economic loss she would suffer as a result of permanent blindness. Appellees retained Dr. Anthony Billings (Billings) as an expert on neurosurgical issues. Dyer deposed Billings and Appellees deposed Bartlow. Both depositions were videotaped under a standing order which allowed all depositions to be videotaped.

¶ 3 Before taking Billings' deposition, Dyer objected to, among other things, Billings' expert witness fee to be deposed. Dyer argued the fee was "unreasonable" within the meaning of 12 O.S.2001 § 3226(B)(3)(c)(1), which provides "[t]he court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery." The trial court denied Dyer's motion to set reasonable expert witness fees and Dyer paid the fee demanded by Billings for his deposition.

¶ 4 Prior to trial, Dyer indicated she would use the video tape of Bartlow's deposition at trial in its entirety and would use parts of Billings' videotaped deposition, but would call neither to appear for live testimony. Appellees, who had not endorsed Billings as a witness in the pretrial conference order, subpoenaed Bartlow and Billings to appear at trial. Over Dyer's objections, Appellees were allowed to call both for cross-examination during Dyer's case-in-chief immediately after their respective depositions had been played. Appellees tendered the standard statutory witness fee for attendance and mileage when the subpoenas were served on Bartlow and Billings.

¶ 5 After their appearances at trial, both Bartlow and Billings sent invoices to Appellees for their expert witness fees for the trial. Appellees declined to pay Bartlow's fees, suggesting he seek compensation from Dyer on the basis that he was Dyer's witness. Appellees did pay Billings, but demanded reimbursement from Dyer on the same basis that Bartlow's invoice was refused. Dyer filed her motion to compel Appellees to pay Bartlow's fees. Appellees then filed their motion to compel Dyer to pay for Billings' fees. Dyer responded to Appellees' motion to compel with a "cross-motion" to "disgorge excessive fees" paid to Billings for his discovery deposition. As noted above, the trial court found in favor of Appellees on all motions and Dyer filed this appeal.

¶ 6 Here on appeal Dyer contends the trial court erred in its determinations on the two motions to compel payment of expert witness fees and on her motion to require Billings to disgorge a portion of his allegedly unreasonable fee for being deposed. In that expert witness fees "are only recoverable when specifically made so by statute", *Andress v. Bowlby*, 1989 OK 78, 773 P.2d 1265, legal questions regarding statutory interpretation are necessarily implicated in our consideration. In such cases, our review is *de novo*. *Heffron v. District Court Oklahoma County*, 2003 OK 75, 77 P.3d 1069. With respect to the reasonableness of expert witness fees, that determination is a matter of discretion for the trial court. *R.J.B. Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 1990 OK CIV APP 47, 813 P.2d 14. We may not reverse a trial court determination for abuse of discretion unless we find the court "made a clearly erroneous conclusion and judgment, against reason and evidence."

1. Appellant Jewell Dyer filed a separate Petition in Error—Appeal No. 97,407—from judgment in favor of Appellees on her medical negligence claim. The substantive questions from that appeal are not at issue here.

*Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, 932 P.2d 1091.

¶ 7 We find merit in Dyer's contention the trial court erred in ordering her to pay Billings' expert witness fees for his live appearance at trial. At the time Dyer deposed Billings, he had been retained by Appellees as an expert in neurosurgery. After Billings had been examined by Dyer's counsel at the deposition, Appellees' counsel chose to ask only three questions on cross-examination. Appellees' counsel then stated on the record that Appellees would "reserve the rest of our examination until trial." Dyer's counsel then asked a few questions on redirect before concluding the deposition.

¶ 8 Appellees' counsel made a considered decision not to make a complete record on Billings' cross-examination at the deposition, apparently expecting to elicit Billings' expert opinion as Appellees' witness at trial. He did so as a matter of legal strategy. Although we find no authority directly on point with the question before us, federal courts have concluded, in analogous circumstances, that a party's decision to limit cross-examination in a discovery deposition is a "strategic choice" and "calculated risk". *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492 (11th Cir.1985).

¶ 9 In *Hendrix,* one party was opposing, pursuant to Fed.R.Civ.P. 804(b)(1) [2], introduction of a discovery deposition at which it had not cross-examined the deponent. Rule 804(b)(1) provides that the deposition testimony of an unavailable witness is not excludable hearsay if the opposing party "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The opposing party in *Hendrix* argued it had not been motivated to cross-examine the deponent because "the deposition was taken for discovery purposes only." [3]

¶ 10 The *Hendrix* Court, at 1506, noted the decision not to cross-examine was a "strategic choice" which did not preclude the adversary's use of the deposition at a subsequent proceeding. Citing *Gill v. Westinghouse Electric Corp.,* 714 F.2d 1105 (11th Cir.1983), the *Hendrix* Court further noted in its reasoning that pretrial depositions are not only intended as a means of discovery, but also serve to preserve relevant testimony that might otherwise be unavailable for trial."

¶ 11 Here, Appellees argue Dyer should be liable for the cost of Billings' expert witness fees because Dyer utilized Billings' deposition at trial and Appellees had a right to cross-examine Billings at trial also. We agree Appellees had the right to subpoena Billings for cross-examination under 12 O.S. 2001 § 3232(A)(3), which provides, *inter alia,* that the deposition of an expert witness "may be used for any purpose", but expressly does not limit issuance of a subpoena "to compel an expert witness to appear in the same manner as any other witness." We do not agree, however, that Dyer should be responsible for the expense of Billings' live testimony where Appellees made the tactical decision not to cross-examine Billings with the knowledge that the deposition could be used by Dyer at trial under § 3232(A)(3).[4]

¶ 12 In an argument similar to that raised in *Hendrix,* Appellees assert they would have acted differently in examining Billings if the deposition had been a trial deposition rather than a discovery deposition. However, § 3232, which authorizes use of depositions in court proceedings, does not differentiate between trial and discovery depositions. In fact, the difference on which Appellees rely is more the result of normative legal practice rather than any statutory prescription.

¶ 13 Section 3232 generally allows use of any part of or all of a deposition, otherwise admissible under the Evidence Code,

---

**2.** Federal counterpart of 12 O.S.2001 § 2804(B)(10).

**3.** *See also, Henkel v. XIM Products, Inc.,* 133 F.R.D. 556 (D.Minn.1991)(protective order was issued against deposing witness again after discovery period had ended and party had refrained from examining deponent who was beyond subpoena power of court.)

**4.** *Compare with, Hall v. Brookshire Bros. Ltd.,* 831 So.2d 1010 (La.App. 3 Cir.2002)(Under Louisiana statutory scheme [La.Code Civ. P. art. 1450(A)(5) ] a party may object to use of expert deposition and require live testimony, however, the objecting party must pay in advance the fee, reasonable expenses and actual costs associated with such live testimony.)

"against any party who was present or who was represented at the taking of the deposition or who had reasonable notice thereof." [5] Thus, depositions may not be used for any of the purposes allowed under § 3232 unless the party against whom it is going to be used had, at a minimum, the opportunity to be present and examine the deponent. The decision whether to take advantage of that opportunity is one for the party put on notice.

¶ 14 Appellees were represented at Billings' deposition and are charged with the knowledge that the deposition could be used at trial by Dyer even though its purpose at the time was for discovery. Appellees made the "strategic choice" to defer any further examination of Billings until trial, at the time knowing they would be responsible for the expert witness fees when they called him. They may not now shift the burden of those fees to Dyer when they could have cross-examined Billings at the deposition.

¶ 15 In choosing to defer a complete examination of Billings, presumably to avoid further disclosure of his expected testimony, Appellees assumed the risk of having to pay for the testimony if Billings had to be called live at trial. Appellees are not deprived of their right to cross-examine Billings, but they must bear the expense resulting from their choice. Appellees concede expert witness fees may not be assessed as litigation costs, unless specifically authorized by statute. *See, Dulan v. Johnston,* 1984 OK 44, 687 P.2d 1045. We have not been made aware of any statutory authority to assess such costs here. The trial court erred in ordering Dyer to pay Billings' expert witness fees for his appearance at trial under Appellees' subpoena.

▮ ¶ 16 With respect to Bartlow, the facts are somewhat different, but in our view the consequences are the same as with Billings. Bartlow was Dyer's retained expert and was deposed by Appellees. Appellees therefore had the opportunity to fully examine Bartlow at the deposition. Additionally, calling Bartlow at trial after his videotaped

deposition had the curious effect of Appellees "cross-examining" their own direct examination at the deposition. In any event, as with Billings' deposition, Appellees were charged with the knowledge that Bartlow's deposition could be used at trial and had the opportunity to expand the deposition examination as necessary to make a complete record.

¶ 17 Dyer chose to stand on Bartlow's deposition testimony, at which Appellees were not only represented but were able to fully examine the deponent. Appellees' choice to subpoena Bartlow for "cross-examination" at trial was their prerogative under § 3232(A)(3), but they may not shift the cost of doing so to Dyer.

▮ ¶ 18 We are not, however, persuaded by Dyer's third contention of trial court error. She asserts the trial court should have ordered Billings to disgorge a portion of his expert witness fees for his deposition appearance. She argues $4,200.00 for approximately five hours of deposition testimony is unreasonable because it was, according to her calculations, eight times more than Billings would have received for performing professional services as a neurosurgeon in a comparable period of time.

¶ 19 Pursuant to 12 O.S.2001 § 3226(B)(3)(c)(1), unless manifest injustice would result, a party seeking discovery must pay experts a "reasonable fee" for time spent responding to the request. What is a reasonable fee is not defined by the Discovery Code, and has not been defined by our courts. In *Drake v. Wal–Mart, Inc.,* 1994 OK CIV APP 47, 876 P.2d 738, the Court of Civil Appeals, citing *Anthony v. Abbott Laboratories,* 106 F.R.D. 461 (D.R.I.1985), articulated that in setting a reasonable expert witness fee:

> ... the ultimate goal is balance, so that parties will not be hampered in their efforts to attract competent experts, while at the same time the opposing parties will not be burdened by excessive fees which produce windfalls for the experts.

**5.** *See, Henkel v. XIM Products, Inc.,* 133 F.R.D. at 557 (Neither the Rules of Civil Procedure nor the Rules of Evidence make any distinction between discovery depositions and depositions for use at trial.)

¶ 20 The *Drake* Court found *Anthony* distinguishable because the expert in the latter case had charged a "friendly" litigant less than what was billed in *Anthony,* the expert had no "discernible overhead", and the record contained no indication of "manifest inconvenience or consequential loss" to the expert. There was evidence the *Drake* expert did incur "material inconvenience and possible financial loss", and there was no evidence the expert had charged "friendly" litigants less. The *Drake* Court held, under the circumstances, a fee of $2,500.00 for four hours and twenty minutes of deposition time and one and one half hours spent responding to discovery requests was not unreasonable.

¶ 21 Appellees produced evidence that other neurosurgeons in the area charged similar or higher fees than Billings demanded here, and also increased their fees if the deposition was to be videotaped. There was no evidence Billings charged other litigants less or otherwise engaged in discriminatory practices in his fees for discovery. We find no authority for Dyer's contention that Billings should be restricted in his expert fees for discovery to an equivalent of the amount he might make for the same period of time in his regular medical practice. The trial court had a sufficient basis for determining what was a "reasonable fee" within the meaning of § 3226(B)(3)(c)(1). There was no clearly erroneous conclusion and judgment, against reason and evidence, such as to evidence an abuse of discretion. *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 932 P.2d at 1097.

¶ 22 Those portions of the trial court's order denying Dyer's motion to compel Appellees to pay Bartlow's expert witness fees, and granting Appellees' motion to compel Dyer to pay Billings' expert witness fees, are REVERSED. The remainder of the trial court's order is AFFIRMED. Dyer's request for appellate attorney fees is DENIED.

JOPLIN, J., concurs; and MITCHELL, P.J., concurs in part and dissents in part with a separate opinion.

Opinion by Bay Mitchell, Presiding Judge: Concurring in Part; Dissenting in Part.

¶ 1 I dissent because I believe the majority fails to recognize the difference between discovery depositions and trial depositions. This ignores the practical and very real distinctions between the two. I would affirm the trial court's decision in all respects.

¶ 2 Originally, Brandenburg retained Dr. Billings as an expert witness. Later, Dyer took Dr. Billings' discovery deposition. Prior to the pretrial conference, Brandenburg decided not to call Dr. Billings as a witness, and did not list him as a witness on the final Pretrial Order. Dyer, however, designated portions of Dr. Billings' deposition testimony to present to the jury *in her case-in-chief.* Brandenburg's counsel then issued a trial subpoena to Dr. Billings so he could cross-examine Dr. Billings live immediately following Dyer's presentation of parts of his deposition testimony. At trial, Dyer did use portions of Dr. Billings' video discovery deposition in her case-in-chief. Brandenburg then cross-examined the subpoenaed Dr. Billings live.

¶ 3 The deposition Dyer introduced at trial was a *discovery deposition taken by Dyer's counsel.* Obviously, the motives of a party to conduct a full examination of its own retained expert are much different in a discovery deposition than in a trial deposition. During this discovery deposition, Brandenburg's counsel did not have any need to ask discovery questions of his own expert, because he did not need to discover Dr. Billings' opinions. Although certain discovery depositions may be used at trial, these depositions are not generally conducted formally or with the expectation that the witness will not be available for trial. During discovery depositions, attorneys routinely make the tactical decision to not cross-examine and thereby reveal their trial strategies. A trial deposition, on the other hand, is normally conducted by the party who retained the expert, and is conducted with all the formalities of trial because the parties assume the deposition will be used at trial in place of the expert's live testimony. The opposing party conducts the cross-examination just as if they were in trial, and all objections are generally made at

the time the deposition is taken. Another distinction is that a discovery deposition is paid for by the party seeking or doing the discovery pursuant to 12 O.S. Supp.2002 § 3226(B)(3)(c), while a trial deposition is paid for by the party who retained the expert and is seeking to preserve his testimony for use at trial in his case-in-chief.

¶ 4 Here, Brandenburg clearly did not have the motive to conduct a full cross-examination during Dyer's discovery deposition of Dr. Billings. It is clear from Dr. Billings' deposition that it was never intended to be a trial deposition, even though it was videotaped. There is no rule requiring parties to ask cross-examination questions of their experts in routine discovery depositions or lose their opportunity to "cross-examine" these witnesses at trial. Cross-examination of an expert witness is an important right.

¶ 5 As to who should be required to pay for Dr. Billings' trial testimony, under these unique circumstances the trial court did not err in requiring Dyer to pay. Dyer contends Dr. Billings was originally retained by Brandenburg, and Brandenburg had issued the trial subpoena, thereby "voluntarily incurring" Dr. Billings' expert witness fees as an expense of litigation. However, Dyer chose to call Dr. Billings as a witness in her case-in-chief, even after being made aware by the trial judge that Dr. Billings would then be considered her witness. If Dyer had not called Dr. Billings by deposition, he would not have been a witness at all at trial and there would be no witness fee to argue about. It was Dyer's voluntary act of using Dr. Billings' deposition testimony in her case-in-chief that caused these fees to be incurred. In all important respects, Dr. Billings was Dyer's expert at trial.

¶ 6 In general, the · party who calls an expert to testify at trial is responsible for paying all of that expert's witness fees, including those incurred during cross-examination. *See generally, Finnell v. Jebco Seismic,* 2003 OK 35, ¶ 11, 67 P.3d 339, 343 (emphasizing that absent a statute, contractual provision or the court's power to assess expenses incurred in litigation-related misconduct, "every litigant is responsible for his (or her) own litigation costs ..."); *McCoy v.*

*McCoy,* 1967 OK 86, ¶¶ 37, 47, 429 P.2d 999, 1011–12 (including expert witness fee and preparation for trial testimony as a litigation expense incurred by the party presenting that witness, but noting that expense could be shifted in a divorce action based on the status of the parties). Thus, the fact that Brandenburg issued the subpoena for Dr. Billings is irrelevant, because he was subpoenaed solely for the purpose of cross-examination. Further, the fact that Dr. Billings was initially Brandenburg's retained expert is also irrelevant because Brandenburg decided not to use Dr. Billings as an expert and removed him from his witness list no later than the last pretrial conference. Instead, it was Dyer who utilized Dr. Billings' testimony in her case-in-chief, and it was not contrary to law for the trial court to require her to pay all the expert witness fees associated with calling Dr. Billings as a witness, including his fees for testifying live for cross-examination.

¶ 7 Similar reasoning applies to Dr. Bartlow's witness fees. Dr. Bartlow was Dyer's expert witness who was retained to develop a "Life Care Plan" and testify regarding future economic loss caused by Dyer's permanent blindness. Brandenburg took Dr. Bartlow's *discovery* deposition, which Dyer presented at trial in its entirety during her case-in-chief pursuant to 12 O.S.2001 § 3232(A)(3)(e). Dr. Bartlow was subpoenaed by Brandenburg to testify live for cross-examination. Dr. Bartlow charged $1,486.77 for his live trial testimony and associated expenses, which the trial court ordered Dyer to pay.

¶ 8 The trial court's treatment of Dr. Bartlow's fees was consistent with its treatment of those of Dr. Billings. When either party uses a *discovery* deposition in its case-in-chief, the other side, in order to conduct a meaningful and effective cross-examination may call the witness to testify live, and any witness fees incurred will be the responsibility of the party who used the witness in its case-in-chief. The trial court did not err by requiring Dyer to pay for the cross-examination of her own expert witness that she presented during her case-in-chief by deposition. No authority is cited, nor do we find any, that would obligate a party to pay for the

right to cross-examine the opposing party's witness.[1]

¶ 9 For these reasons, I dissent to the majority's opinion reversing the trial court's order that Dyer should pay the witness fees of Dr. Billings and Dr. Bartlow for testifying live at trial.   In all other respects, I concur.

---

**1.** It should be emphasized that if these depositions had been trial depositions instead of mere discovery depositions, a different result would be required.