Dennis HURST and Joyce
Hurst, Plaintiffs,

v.

UNITED STATES of America and Don
Hight, Defendants.

Civ. No. 87–3018.

United States District Court,
D. South Dakota, C.D.

Nov. 16, 1988.

Mike Abourezk, Johnson, Eklund & Davis, Gregory, S.D., for plaintiffs.

Charles M. Thompson, May, Adam, Gerdes & Thompson, Pierre, S.D., Michael "Mick" Strain, White River, S.D., for defendant Don Hight.

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., for defendant U.S.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Plaintiffs filed a motion on April 4, 1988 to compel defendants to pay the expert witness fees of Dr. Daryl Simons in connection with a deposition taken by defendants on January 8, 1988. Defendants have responded that they sufficiently paid Dr. Simons by tendering $125 for the costs of the deposition. This Court grants in part and denies in part plaintiffs' motion.

## I. FACTS

Plaintiffs Dennis and Joyce Hurst had their land near Murdo, South Dakota flooded by the White River during March and April of 1986. The Hursts filed this action on April 17, 1987 alleging that the property damage resulting from the flood was caused or aggravated by two erosion control jetties extending into the river channel constructed by defendant Don Hight under the supervision of defendant United States of America's Omaha District of the Army Corps of Engineers.

Due to the complexity of the questions involved in the case, plaintiffs retained two experts on engineering and the dynamics of river flow, Dr. Charles Baggs and Dr. Daryl Simons. In preparation for trial defendants sought to depose both Dr. Baggs and Dr. Simons. The litigants made arrangements to depose both individuals on January 8, 1988 at 9:00 a.m. in Fort Collins, Colorado, near where the experts worked and resided. In advance of the deposition, defendants were advised that it could cost as much as $2,000 in fees to require Simons to surrender an entire day of his time.[1] The defendants elected to depose Dr. Baggs first, and Dr. Simons was told that his deposition would follow the conclusion of Baggs' deposition.

Because he was to be available for a 9:00 a.m. deposition and because it was uncertain how long Baggs' deposition would last, Simons was at his office throughout the morning. According to plaintiffs, defendants indicated prior to the lunch break on the day of the deposition that they were almost done with Baggs and would like to start Simons' deposition immediately after they finished with Baggs. Plaintiffs apparently called Simons and had Simons drive to the location of the deposition, where Simons appeared at 1:00 p.m. Simons apparently waited from 1:00 until 3:25 as the deposition of Baggs continued. Dr. Simons' deposition lasted 55 minutes from 3:25 p.m. until 4:20 p.m.

On February 2, 1988, plaintiffs sent defendants a bill on behalf of Dr. Simons for 12 hours of time at $125 per hour for a total of $1,500. The bill covered the time Simons purportedly was kept waiting, the time during which he was actually deposed, and an additional four hours of preparation time prior to the date of the deposition. In essence, Simons charged the defendants for a full eight hour day plus four hours spent reviewing the facts of the case. In a letter dated February 3, 1988, an attorney for the defendants refused to pay the $1,500 bill and instead tendered $125. The $125 reflected Simons' hourly rate for the one hour during which he was deposed.

1. On December 29, 1987, an attorney for the plaintiffs sent to the defendants' attorneys a letter to confirm the deposition arrangements. The letter stated:

Finally, so that it does not come as a nasty surprise, I do want to mention the fact that both Professor Baggs and Dr. Simons are most likely going to want to be reimbursed at their normal rate for their time. Dr. Simons is recognized internationally as one of the world's foremost engineers on river hydraulics and a day of his companionship can cost as much as $2,000.

This Court held a separate trial on the culpability of defendant Don Hight and submitted to a jury the question of whether Hight was the proximate cause of the Hursts' property damage resulting from the 1986 floods. The jury returned a verdict on February 29, 1988 for defendant Hight. This Court then ordered that briefs be submitted on the question of the government's liability in the case. In an order and memorandum opinion filed August 31, 1988, this Court found in favor of the government and dismissed the case. The plaintiffs' motion to compel payment of expert witness fees has gone undecided.

## II. DISCUSSION

Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure governs payment of expert witness fees in discovery related to cases before this Court. Rule 26(b)(4)(C) states in part:

> Unless manifest injustice would result, the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery ...

Defendants do not dispute that they are obliged to pay reasonable fees for Dr. Simon's time. Consequently, this Court need not probe whether these are circumstances in which defendants must pay for the time of plaintiffs' expert. Defendants instead argue that $125 is a reasonable fee to pay Dr. Simons for his 55 minute deposition. Therefore, the only question for this Court is, under the circumstances of the case, what is a reasonable fee to pay Dr. Simons for his services related to the deposition.

■ There is little guidance in federal case law regarding what is a reasonable fee for an expert. Most courts acknowledge the paucity of authority and then use their discretion to select an amount deemed reasonable. *See, e.g., Draper v. Red Devil, Inc.*, 114 F.R.D. 46, 48 (E.D.Ark.1987). In general terms, a reasonable fee should cover the expert's time spent complying with the requested discovery. *See Keith v. Van*

*Dorn Plastic Machinery Co.*, 86 F.R.D. 458, 460 (E.D.Pa.1980). Ideally, Rule 26(b)(4)(C) seeks to calibrate the fee so that plaintiffs will not be hampered in efforts to hire quality experts, while defendants will not be burdened by unfairly high fees preventing feasible discovery and resulting in windfalls to the expert. *Anthony v. Abbott Laboratories*, 106 F.R.D. 461, 465 (D.R.I.1985). The goal of Rule 26(b)(4)(C) is to compensate experts for their time in participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert work free from cost. *Grinnell Corp. v. Hackett*, 70 F.R.D. 326, 333 (D.R.I.1976).

■ In the instant case, this Court finds it entirely unreasonable for Dr. Simons to request $125 per hour for the time during the morning of the deposition when he was in his office and was not doing work relating to this case. However, Dr. Simons is entitled to his hourly fee for the time he spent preparing himself for the deposition and the time during which he was deposed. Together, this equals five hours of time.

Similarly, this Court finds Dr. Simons' fee of $125 per hour not to be unreasonable. *Cf., Anthony*, 106 F.R.D. at 465 ($250 per hour fee permitted as the outermost periphery of sustainable awards). Dr. Simons is a renowned expert in the engineering and dynamics of water flow. Moreover, plaintiffs warned defendants that Dr. Simons' time would be very expensive. Therefore, this Court deems $625 to be a reasonable fee for the time Dr. Simons spent responding to defendants' discovery. This Court also deems the $625 reward to be generous enough to compensate Dr. Simons for the time he might have wasted waiting for Dr. Baggs' deposition to end. The defendants are ordered to pay Dr. Simons an additional $500 above the $125 already tendered to Simons.[2]

---

2. This Court expresses no opinion on whether these costs are taxable to plaintiffs as losing parties before this Court. Similarly, this Court expresses no opinion on either defendants' request for taxation of costs in this case or plaintiffs' objections to defendants' request.