Delmas R. HOSE and Virginia Hose, Husband and Wife, Plaintiffs,

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, a Delaware corporation; Stoody Deloro Stellite, Inc., a Delaware corporation, d/b/a Stoody Company; and Arcair Company, a Delaware corporation, d/b/a Tweco/Arcair, Defendants.

No. 1–92–CV–70026.

United States District Court, S.D. Iowa, W.D.

March 9, 1994.

Elaine Martin of Martin & Martin, Omaha, IA, for plaintiffs.

Bruce Johnson of Gamble & Davis, Des Moines, IA, for defendants.

## ORDER GRANTING C & NW'S MOTION TO LIMIT EXPERT FEES

BENNETT, United States Magistrate Judge.

The central issue raised in this discovery dispute concerns the increasingly recurring problem of assessing the reasonableness of an expert witness' fees which may be charged to an opposing party under Federal Rule of Civil Procedure 26. One of Plaintiffs' treating neurologists, Dr. Jan Golnick, of Papillion, Nebraska, is seeking to be compensated for his deposition taken by Defendant Chicago and North Western at a requested hourly rate of $800.00. Thus, the court is compelled to revisit its earlier decision in *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493 (S.D.Iowa 1992), where the court held that a liability expert in a products liability case requested a deposition fee to the defendants of $500.00 per hour, twice what he was charging the plaintiff, was grossly excessive and unreasonable. A second issue concerns whether the party seeking the deposition of an expert may be required to pay compensation for time spent by the expert preparing for the deposition.

## I. INTRODUCTION AND FACTUAL BACKGROUND

This matter is before the court pursuant to Defendant Chicago and North Western Transportation Company's ("Chicago and North Western") Motion to Limit Expert Fees and Plaintiffs' Objection to Chicago North Western's Motion to Limit Expert Fees. Defendant Chicago and North Western objects to Dr. Jan Golnick's request to be compensated at an hourly rate of $800.00 for his deposition taken by Chicago and North Western.[1] Chicago and North Western further objects to Dr. Golnick's request to be compensated for time spent reviewing medical records in preparation for his deposition.

This is a Federal Employers' Liability Act action in which Plaintiff alleges he sustained personal injuries during the course of his employment with Chicago and North Western. Dr. Golnick, who was deposed by Chicago and North Western on November 18, 1993, requested compensation of $800.00 per hour for his deposition. Following the deposition, Dr. Golnick submitted his bill to the Defendant in the total amount of $1,360.00. The bill reflected a $1,200.00 charge for his 90–minute deposition and an additional charge of $160.00 for reviewing medical records.[2]

---

[1] On December 15, 1993, the court ordered the Clerk of Court to serve Dr. Golnick with a copy of Defendant's motion filed December 1, 1993 and a copy of Plaintiffs' objection filed December 6, 1993. This action was necessitated because neither the attorney for Plaintiffs nor the attorney for Chicago and North Western represent Dr. Golnick and, apparently, Dr. Golnick was not served with a copy of either party's pleading with regard to this issue. Dr. Golnick was given fourteen (14) days in which to file a response.

Dr. Golnick filed his Affidavit on January 3, 1994.

[2] The amount of medical records reviewed by Dr. Golnick in preparation for his deposition is apparently in dispute. Chicago and North Western's motion alleges that Dr. Golnick reviewed 14 pages of medical records (Def. Mot. to Limit Expert Fees at ¶4, December 1, 1993). Dr. Golnick, however, states he reviewed approximately 200 pages of medical records prior to the

Dr. Golnick, a physician specializing in neurology and disability evaluations, maintains a private practice in Papillion, Nebraska. Dr. Golnick is Plaintiff's treating neurologist. He is a fellow of the American Academy of Disability Evaluation Physicians. Aff. of Dr. Jan Golnick, ¶ 1, filed Jan. 3, 1994. Additionally, Dr. Golnick states he has testified on many occasions as an expert witness on the subject of neurology and disability evaluation. *Id.*

Dr. Golnick asserts that his requested hourly fee of $800.00 for his deposition is based on the fact that he was unable to conduct neurological testing during the time expended reviewing the medical records and giving his deposition—services for which he usually charges approximately $800.00 per hour. *Id.* at ¶ 3. He also asserts that his usual and customary rate for reviewing records in preparation for depositions is $110.00 per hour. *Id.* at ¶ 4. One of Chicago and North Western's medical experts, Dr. Neil Rosenberg, also a neurologist, charged Plaintiff a fee of $1,500.00 for a one-half day deposition.[3]

## II. ANALYSIS

### A. Reasonableness of Dr. Golnick's fee

■ The requirement that the party seeking discovery pay an adverse party's expert for time spent in responding to discovery is now well ensconced. Federal Rule of Civil Procedure 26(b)(4)(C) states in pertinent part: "Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision ..." Fed. R.Civ.P. 26(b)(4)(C). "The purpose of the

rule is to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *United States v. City of Twin Falls, Idaho,* 806 F.2d 862, 879 (9th Cir.1986), *cert. denied sub nom., City of Twin Falls, Idaho v. Envirotech Corp.,* 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987); *Hurst v. United States,* 123 F.R.D. 319, 321 (D.S.D.1988) ("[T]he goal of Rule 26(b)(4)(C) is to compensate experts for their time in participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert work free from cost."); *see also* 4 *Moore's Federal Practice* ¶ 26.66[5] (2d ed. 1985). "The language of the rule is mandatory ('shall'), unless manifest injustice would result." *City of Twin Falls, Idaho,* 806 F.2d at 879.

Neither party cited any authority in their submissions and, unfortunately, there is a paucity of decisions on this question. In *Goldwater v. Postmaster General of the United States,* 136 F.R.D. 337 (D.Conn.1991), the court aptly observed that "[t]here is very little authority as to what is meant by the term 'a reasonable fee' in Rule 26(b)(4)(C)." *Id.* at 339. In *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493, 495 (S.D.Iowa 1992), this court agreed with the statement in *Goldwater* that " '[w]hat little authority does exist does not supply the court with much guidance ...' in determining a reasonable fee for an expert witness." *Id.* at 495.[4]

Following the court's lead in *Goldwater,* in *Jochims* this court concluded there are seven factors which a court should consider in determining the reasonableness of an expert's fee: (1) "the witness's area of expertise"; (2) "the education and training that is required to provide the expert insight which is

<hr>

deposition. (Aff. of Jan Golnick at ¶ 2, January 3, 1994). The basis for Chicago and North Western's assertion is unknown, as Dr. Golnick's bill for the time spent reviewing Plaintiff's records does not reveal the amount of records reviewed, but only the time expended in the review process.

**3.** Because the parties have not set forth the exact number of hours which constitute a one-half day deposition, the court assumes for the purposes of this decision that a one-half day deposition runs between three and one-half hours to four hours in length. Given Dr. Rosenberg's hefty fee of

$1,500.00, the court extrapolates that Dr. Rosenberg charged Plaintiff between $375.00 and $429.00 per hour during the taking of his deposition.

**4.** In *Goldwater,* 136 F.R.D. 337, the court held, after applying the six factor analysis set forth in that opinion, that the reasonable fee for a psychiatric expert in an employment discrimination claim was $200.00 per hour rather than the alternative hourly fees requested of $450.00 or $350.00. *Id.* at 340.

sought"; (3) "the prevailing rates of other comparably respected available experts"; (4) "the nature, quality and complexity of the discovery responses provided"; (5) "the fee actually being charged to the party who retained the expert"; (6) "fees traditionally charged by the expert on related matters"; and (7) "any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26." *Id.* at 495–496. Since this court's decision in *Jochims* was handed down, other courts have adopted the analysis set out in that decision. *See Dominguez v. Syntex Lab., Inc.,* 149 F.R.D. 166, 167 (S.D.Ind.1993); *Pierce v. Nelson,* 509 N.W.2d 471, 474–75 (Iowa 1993).

■ Upon consideration of the seven factors delineated in *Jochims,* the court is lead to the inescapable conclusion that Dr. Golnick's requested hourly rate of $800.00 for deposition testimony is grossly excessive—or as one court described a requested fee, as "unconscionable" and "astronomical". *Anthony v. Abbott Lab.,* 106 F.R.D. 461, 464–65 (D.R.I.1985).[5] The weight to be accorded any particular factor is dependant upon the unique circumstances of each case. *Dominguez,* 149 F.R.D. at 168; *Goldwater,* 136 F.R.D. at 340.

*1. Witness' Area of Expertise, Education, and Training.* Although it is uncontroverted that Dr. Golnick is a physician who specializes in neurology, the record is devoid of evidence that Dr. Golnick is a preeminent expert in his field or that he possesses knowledge or training unique from other neurologists. Even if the record did reflect that Dr. Golnick possessed unique expertise or training in the field of neurology, courts have been slow to award exorbitant fees based on an expert's special abilities. *See Anthony,* 106 F.R.D. at 464 (denying fee

request of $420.00 per hour by physician who was "one of only a handful of physicians" with expertise to testify on subject); *Dominguez,* 149 F.R.D. at 168 (holding that physician, who specialized in taste and smell, taught medical school classes, and conducted research in his area of expertise, was not entitled to earn premium fee); *cf. Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 955–56 (1st Cir.1984) (holding on 42 U.S.C. § 1988 claim that Harvard Law School professor was not entitled to be compensated at requested rate of $275.00 per hour). An expert, such as Dr. Golnick, "cannot be left free, in this sort of proceeding, arbitrarily to saddle his adversary with whatever price tag strikes his fancy." *Anthony,* 106 F.R.D. at 464.

The court notes that Dr. Golnick's professional practice is located at 401 East *Gold Coast* Road, Papillion, Nebraska.[6] Neither Dr. Golnick's background, education, training or the status of his location entitles him to the gilded $800.00 hourly rate he seeks. Based on a standard (40 hour) work week, Dr. Golnick would earn $1,664,000.00 a year at his requested hourly rate. "He may well be a genius in his field, but this court cannot find that even so important and prestigious a profession ... has a right to command such exorbitant rewards." *Anthony,* 106 F.R.D. at 464.

Moreover, Dr. Golnick's status as Plaintiff's treating physician, rather than a privately retained expert, further militates against awarding a fee request of $800.00 per hour. As the court recently observed in *Pierce v. Nelson,* 509 N.W.2d at 474, "[u]nlike an expert retained only for litigation, a treating physician gains unique and firsthand knowledge through the doctor-patient relationship. When knowledge gained in that relationship bears on an issue in controversy,

---

5. In *Anthony,* 106 F.R.D. 461, the court held that plaintiff's medical expert was not entitled to compensation at an hourly rate of $420.00 for giving a deposition. The court's decision was based, in part, on the fact that the expert had charged a "friendly" litigant $250.00 per hour for his last deposition appearance. *Id.* at 464. The court found that an hourly rate of $250.00 was "at the outer-most periphery of the range of sustainable awards." *Id.* at 465.

6. The term "Gold Coast" refers to the coast on the Gulf of Guinea in western Africa along the southern shore of the Republic of Ghana, bordering the Ivory Coast on the west. It is a former British colony that has been part of the Republic of Ghana since 1957. AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 565 (New College ed. 1976). In a secondary sense, the term "Gold Coast" refers to an exclusive residential neighborhood. WEBSTERS THIRD NEW INTERNATIONAL DICTIONARY 975 (1986).

the treating physician assumes the obligation borne by all citizens to give relevant testimony."

**2. The Prevailing Rates of Other Comparable Experts.** The only evidence in the record before the court regarding comparable experts is that Chicago and North Western's expert, Dr. Rosenberg, charged Plaintiff $1,500.00 for a half day deposition. Rosenberg's fee of between $375.00 and $429.00 per hour, steep by any measure, is approximately half of what Dr. Golnick seeks here. Neither party, nor Dr. Golnick has offered any rationale for the 100 percent surcharge of Dr. Golnick.[7] In *Dominguez*, 149 F.R.D. at 168, the court rejected a fee request by a physician which was two and one-half times the amount charged by a physician of equal stature in the same litigation.[8]

**3. Nature, Quality, and Complexity of the Discovery Responses Provided.** Dr. Golnick's deposition was conducted in his position as Plaintiff's treating neurologist. The parties, however, have not addressed the specific details of Dr. Golnick's testimony. Undoubtedly, the deposition touched upon Dr. Golnick's treatment of Plaintiff and delved into Dr. Golnick's area of expertise, neurology. The record, however, does not reveal any substantial differences in the nature, quality or complexity of Dr. Golnick's testimony which would distinguish it from Chicago and North Western's expert, Dr. Rosenberg.

**4. Fees Traditionally Charged by the Expert on Related Matters.**[9] Dr. Golnick states that his usual and customary charge for reviewing medical records is $110 per hour and $800 per hour for providing "expert neurological testimony." Dr. Golnick, however, does not identify on how many occasions he has been compensated for providing expert testimony nor at what rate. Dr. Golnick does aver that he charges approximately $800.00 per hour for conducting "neurological testing." Dr. Golnick, however, does not reveal what he charges when he is not conducting neurological testing services.[10] Although Dr. Golnick's expert opinion is undoubtedly of considerable value, Dr. Golnick has offered no explanation or basis for charging the same hourly charge for being deposed as he is paid

7. The mere fact Dr. Golnick states in his affidavit he customarily charges $800.00 for providing expert neurological testimony does not make his fee request here "reasonable." As the court observed in *Pierce*, 509 N.W.2d at 475, "[w]hile the fee being charged to the expert's patient or client is one of the *Jochims'* factors, this factor alone is insufficient to support a finding of reasonableness ... this failure by the court to make an independent finding of reasonableness constitutes and abuse of discretion."

8. In *Dominguez*, the court awarded the physician expert a fee of $341.50 per hour. *Dominguez*, 149 F.R.D. at 170. The court's research reveals that is the most awarded any expert under Rule 26(b)(4)(C). Before the *Dominguez* decision, the most previously awarded an expert was $250.00 per hour. *Id.* at 170 n. 4 (citing *Jochims*, 141 F.R.D. 493 and *Anthony*, 106 F.R.D. 461.) The continuing escalation of expert witness fees and the increasing attitude of experts that they should be accorded fees set at the maximum-the-traffic-will-bear is of deep and justifiable concern. The escalation of the costs of conducting civil litigation in this country increases the present and grave danger that redress in the federal courts will be priced beyond the reach of all but the most affluent. Judge Selya eloquently sounded the alarm in *Anthony*, where he stated:

> Our citizens' access to justice, which is at the core of our constitutional system of govern-

ment, is under serious siege. Obtaining justice in this modern era costs too much. The courts are among our most treasured institutions. And, if they are to remain strong and viable, they cannot sit idly by in the face of attempts to loot the system. To be sure, expert witness fees are but the tip of an immense iceberg. But, the skyrocketing costs of litigation have not sprung full-blown from nowhere. Those costs are made up of bits and pieces, and relaxation of standards of fairness in one instance threatens further escalation across the board. The effective administration of justice depends, in significant part, on the maintenance and enforcement of a reasoned cost/benefit vigil by the judiciary.

*Anthony*, 106 F.R.D. at 465; *Jochims*, 141 F.R.D. at 497 ("Judge Selya's concerns are even more acute now than when he wrote them in 1985.") (footnote omitted.)

9. Because the record fails to reveal what Dr. Golnick has charged Plaintiff for his services, the court cannot address the closely related factor of the fee actually charged to the party who retained the expert.

10. Dr. Golnick states that he conducts neurological testing on Wednesdays and after five o'clock in the afternoons on other days. *Golnick Aff.* at ¶ 3. He does not reveal what he charges when he is not conducting neurological testing.

for conducting neurological testing.[11] Indeed, Dr. Golnick's participation in a deposition more closely parallels his work reviewing medical records, for which he charges "only" $110.00 per hour, than his work performing neurological testing.

**5.  Other Factors.**  Dr. Golnick's deposition took place from approximately 5:00 p.m. to 6:30 p.m. on November 18, 1993. The significance of this fact is that Dr. Golnick's deposition was taken after the close of normal business hours.[12]  Such an apparent scheduling concession undoubtedly lessened any inconveniences the deposition had with Dr. Golnick's practice of medicine.  There has been no showing here of consequential loss resulting from Dr. Golnick's deposition.

Finally, it must be noted that Dr. Golnick's participation in this litigation follows from his role as Plaintiff's treating neurologist.  As the court in *Anthony* aptly observed: "[T]his court is not so naive as to overlook the strain of esurience which sometimes seems to infect certain physicians when they become involved as experts in the litigation process." *Anthony*, 106 F.R.D. at 463.

**6.  Conclusion.**  Chicago and North Western generously concedes that Dr. Golnick should be limited to a fee of $400.00 per hour.  Consideration of the delineated factors leads the court to the inescapable conclusion that Dr. Golnick's requested hourly rate of $800.00 for deposition testimony is grossly excessive—or as the court described the requested fee in *Anthony* "unconscionable" and "astronomical".  *Anthony*, 106 F.R.D. at 464–65.

The court has no trouble reducing Dr. Golnick's requested fee from $800.00 to $400.00 per hour.  This is based upon the application of the appropriate factors previously identified, and Chicago and North Western's concession that $400.00 per hour is a "reasonable" fee.  Dr. Golnick's requested fee of $800.00 per hour is an unfortunate example of the continuing escalating costs of civil litigation in the federal courts.  The time has come to halt further escalation of these excesses.[13]

Pursuant to Federal Rule of Civil Procedure 26(b)(4)(C), it is ordered that the Defendant pay Plaintiff's retained medical expert, Dr. Golnick, $400.00 per hour as a fee for his deposition testimony.

### B.  Fees for Reviewing Medical Records

■  Chicago and North Western further objects to Dr. Golnick's charging them for the time he spent reviewing medical records in preparation for his deposition.[14]  Courts have awarded compensation for "preparation" time.  *See Carter–Wallace, Inc. v. Hartz Mountain Indus.*, 553 F.Supp. 45, 53 (S.D.N.Y.1982); *E.E.O.C. v. Sears, Roebuck and Co.*, 138 F.R.D. 523, 526 (N.D.Ill.1991). Other courts have limited compensation to time spent in the deposition.  *See Cotton v. Consolidation Coal Co.*, 457 F.2d 641, 646–47 (6th Cir.1972); *Benjamin v. Gloz*, 130 F.R.D. 455, 457 (D.Colo.1990); *Rhee v. Witco Chem. Corp.*, 126 F.R.D. 45, 47–48 (N.D.Ill.1989); *Herbst v. International Tel. & Tel. Corp.*, 65 F.R.D. 528, 531 (D.Conn.1975).

In *Rhee*, the plaintiff's request for compensation of the expert's preparation time was

**11.**  The court doubts that there are few individuals with the means necessary to pay Dr. Golnick his customary fee for performing neurological testing, and that if not for the existence of third party payees, such as health maintenance organizations and health insurance companies, it is difficult to imagine the market permitting Dr. Golnick to maintain his current fee structure.

**12.**  While Dr. Golnick states in his affidavit that he performs neurological testing after 5:00 p.m. and that he was unable to conduct such testing while he was being deposed, he does not state that his deposition actually interfered with any specific testing nor that he was forced to reschedule, or more importantly, forego testing because of his deposition in this matter.

**13.**  But for Chicago and North Western's concession that $400.00 per hour constitutes a reasonable fee for Dr. Golnick, the court would reduce Dr. Golnick's requested fee to $220.00 per hour.  Such a fee would represent twice the amount which Dr. Golnick believes is appropriate for his time spent reviewing medical records, and would constitute an annual gross income of $437,-600.00 based on a 40 hour work week.

**14.**  Chicago and North Western does not complain about the reasonableness of Dr. Golnick's hourly rate, $110.00 per hour.

denied. *Rhee*, 126 F.R.D. at 47. Judge Norgle's rationale, in part, for his conclusion was grounded on the following:

> [T]ime spent "preparing" for a deposition entails not only the expert's review of his conclusions and their basis, but also consultation between the responding party's counsel and the expert to prepare the expert to best support the responding party's case and to anticipate questions from seeking party's counsel. An expert's deposition is in part a dress rehearsal for his testimony at trial and thus his preparation is part of trial preparation. One party need not pay for the other's trial preparation. The court finds that a deposing party need not compensate the opposing party's expert for time spent "preparing" for deposition.

*Rhee*, 126 F.R.D. at 47–48.[15]

Under the facts of this case, the court disagrees with the holding of *Rhee* and those other cases denying an expert compensation for time spent preparing for the deposition. Here, Dr. Golnick is seeking compensation only for his time spent reviewing Plaintiff's medical records. Dr. Golnick was not retained specifically for this litigation, but rather is Plaintiff's treating neurologist. He is not seeking to be compensated for any time spent in conference with Plaintiff's counsel. Thus, much if not all of the rationale underlying the decision in *Rhee* is absent here. Furthermore, compensating Dr. Golnick for his time spent reviewing Plaintiff's medical records speeds the deposition process along, thereby saving on costs. The more costly alternative would be for Dr. Golnick to refresh his memory during the deposition with the medical records. Under that scenario, not only would Chicago and North Western be required to pay Dr. Golnick, but would be required to absorb the additional costs of their counsel while Dr. Golnick refreshed his memory.

## III. CONCLUSION

The escalating cost of federal civil litigation is a serious problem. Indeed, as this court noted in *Jochims*, 141 F.R.D. at 497, Congress recently passed the Civil Justice Reform Act of 1990, 28 U.S.C. § 471 *et seq.* This legislation mandates that each of the 94 district courts, following study by an advisory group, implement "a civil justice expense and delay reduction plan." 28 U.S.C. § 471. One of the purposes of the civil justice expense and delay reduction plan is to "ensure just, speedy and inexpensive resolutions of civil disputes." *Id.*

The rising cost of expert witnesses in federal civil litigation is just one strand of a complex problem. Vigilant review by trial judges of expert witness fees will, of course, not solve this problem or, in and of itself, achieve the "inexpensive resolution of civil disputes." However, it is an important beginning and a vitally significant component of the overall solution. Neither the enormity of the problem nor the conventional reluctance to tackle escalating expert witness fees justifies the failure to independently review expert witness fees to determine their reasonableness.

For the reasons expressed above, Dr. Golnick is entitled to 1.5 hours at $400.00 per hour plus $160.00 for reviewing medical records, for a total of $760.00, rather than the $1,360.00 requested.

**IT IS SO ORDERED.**

---

**15.** Judge Norgle left open the possibility that compensation for an expert might be appropriate under certain circumstances:

> There may be some cases where compensation of an expert for time spent preparing for a deposition is appropriate, such as in a complex case where the expert's deposition has been repeatedly postponed over long periods by the seeking party causing the expert to repeatedly review voluminous documents.

*Rhee*, 126 F.R.D. at 47.