**George and Sylvia BOWEN, Plaintiffs,**

v.

**Rex MONAHAN, Defendant.**

No. 8:CV93–00530.

United States District Court, D. Nebraska.

Oct. 4, 1995.

Patrick G. Nelson, Daub, Haggart Law Firm, Omaha, NE, Lisa A. Sarver, Dwyer, Pohren Law Firm, Omaha, NE, John J. O'Connor, Jr., R. Nicholas Palmer, Palmer, Paoli Law Firm, Denver, CO, Kenneth B. McClain, Gregory Leyh, Humphrey, Farrington Law Firm, Independence, MO, W. Eric Wood, Downing, Alexander Law Firm, Omaha, NE, for George and Sylvia Bowen.

Shirley K. Williams, Judy M. Lange, Knudsen, Berkheimer Law Firm, Lincoln, NE, George W. Mueller, Burns, Wall Law Firm, Denver, CO, for Rex Monahan.

Craig A. Knickrehm, Brashear, Ginn Law Firm, Omaha, NE, Charles A. Bewley, Berenbaum, Weinshienk Law Firm, Denver, CO, for J. Martin Schlumberger.

Craig A. Knickrehm, Brashear, Ginn Law Firm, Omaha, NE, Roy M. Hahn, Hahn Law Office, Scotts Bluff, NE, for Bernice H. Hart.

William F. Hargens, Steven P. Case, McGrath, North Law Firm, Omaha, NE, for Ben Hogan.

## ORDER

JAUDZEMIS, United States Magistrate Judge.

Defendant Monahan has filed a Motion to Compel (# 111) requesting an order from the court compelling the attendance of Dr. Daniel Teitelbaum at a deposition and requesting the court to set a reasonable fee for the expert. By telephone conference call with the attorneys of record, the court has been advised that Dr. Teitelbaum will appear for his deposition scheduled for Thursday, October 5, 1995. For that reason, the only matter at issue is the reasonableness of the requested fee.

## FACTUAL BACKGROUND

Plaintiffs have brought an action alleging contamination of their ground water by activities of the defendant. That contamination is alleged to have caused personal illness, loss of the livestock and diminution of the value of the real estate. Dr. Teitelbaum is a medical doctor who presently offices in Denver, Colorado. He has established a professional corporation entitled Daniel T. Teitelbaum, M.D., P.C. and apparently concentrates his practice in the area of medical toxicology. Sometime in the summer of 1995, he evaluated plaintiff Sylvia Bowen's medical condition and has opined that she suffers "from a mixed central and peripheral neuropathy, most consistent with a chronic hydrocarbon induced neuropathy." He links the diagnosis to the consumption of hydrocarbon contaminated ground water. (Plaintiffs' Index to Evidence at Ex. 5). In their briefs, the Bowens advise the court that Dr. Teitelbaum is their only medical expert in this case and his testimony is of critical importance.

With respect to the depositions of expert witnesses, the Bowens advise the court that counsel had agreed that the individual who noticed an expert deposition would pay the expert's fees for attending the deposition, plus one hour preparation. In support of this interpretation of the agreement, the Bowens rely upon an exchange between counsel during the deposition of Dr. Reagor, plaintiffs' expert toxicologist. Defendant's counsel was asking Dr. Reagor about his fees. Plaintiffs' counsel interrupted to inquire, "When are you going to pay him, George?" and defense counsel responded, "Send me a bill." (*Id.* at Ex. 2). Pursuant to this "agreement," defendant has already paid the fees of one expert defendant has deposed and has agreed to pay the fees of another expert.

It is undisputed by the parties that the amount of Dr. Teitelbaum's fees were never discussed until a short time before his deposition was scheduled to be taken. On September 25, 1995, defendant was first advised that Dr. Teitelbaum required payment of $5,000 for one day's deposition or $3,000 for a one-half day deposition, which fee was to be paid in advance. (Index to Evidence in Support of Monahan's Motion to Compel, Ex. 3). Defendant immediately objected to the fee request. (*Id.* at Ex. 4). Shortly thereafter, the motion was filed.

## LEGAL ANALYSIS

Plaintiff relies upon the agreement between counsel in opposing defendant's request that the court determine whether the

proposed fees are reasonable. No agreement between the parties, unless sanctioned by the court, can relieve the parties of the express language of the Federal Rules of Civil Procedure. Those rules contemplate that the party seeking discovery shall pay the expert "a reasonable fee" for the time spent in responding to discovery. With respect to expert fees, "unless the courts patrol the battlefield to ensure fairness, the circumstances invite extortionate fee setting." *U.S. Energy Corp. v. NUKEM, Inc.,* 163 F.R.D. 344, 347 (D.Colo.1995). I find that the pending matter is appropriate for court intervention, and that any "agreement" between the parties impliedly encompassed an understanding that the fees would be "reasonable."

■ There is little disagreement between the parties, and indeed between the courts, regarding the standards to be employed in this case.

Although there is a paucity of decisions in the area of what constitutes a "reasonable" fee for an expert, those cases which have addressed the issue have set forth seven factors to be considered in determining whether or not a fee is reasonable: (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26. *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493, 495 (S.D.Ia. 1992); *see also Hose v. Chicago and North Western Transp. Co.,* 154 F.R.D. 222 (S.D.Ia.1994); *Goldwater v. Postmaster General of the United States,* 136 F.R.D. 337 (D.Conn.1991).

*U.S. Energy Corp. v. NUKEM, Inc.,* 163 F.R.D. 344, 345–46 (D.Colo.1995).

In *NUKEM,* the court found that the fee of an expert who charged $170 per hour for support services and $300 per hour for depositions and trial was excessive. The court compared the expert's fee to defendant's own expert who charged a flat rate of $200 per hour for his services. The court noted that, even when there were few experts who testified on the subject matter at issue, there must be some reasonable relationship between the services rendered and the remuneration to which the expert is entitled.

In the instant case, the court has reviewed the curriculum vitae of Dr. Teitelbaum and defendant's expert Dr. Kreiger (defendant's Index of Evidence Ex. 9 & 10). Apparently since 1988, Dr. Teitelbaum has been exclusively employed in his own professional corporation providing expert witness testimony and consultant services. Prior to that, since completing a fellowship in medicine and toxicology in 1968, he was employed in various capacities as a medical doctor. Dr. Teitelbaum has an extensive resume of committee affiliations and publications.

Dr. Kreiger is currently a manager in a health consulting group. He has been an associate professor at the University of Colorado—Boulder in the Department of Molecular and Environmental Toxicology College of Pharmacy since 1987. He completed his residency at the Mayo Clinic in 1981 and then obtained a masters degree in public health in 1982 from Johns Hopkins. Like Dr. Teitelbaum, Dr. Kreiger's resume lists an impressive series of publications and presentations, both national and international. The court is advised by defense counsel that Dr. Kreiger charges $250 per hour for deposition testimony.

■ In reviewing the reasonableness of Dr. Teitelbaum's proposed fee, the court has found particularly instructive the letter of engagement between Dr. Teitelbaum and plaintiff's counsel dated September 6, 1995 (plaintiff's Index of Evidence at Ex. 2). Dr. Teitelbaum's hourly rate is $600. On weekends or holidays, the hourly rate plus fifty percent is charged. Personnel hourly fees are as follows: Medicolegal Assistant—$90; Professional Research Associate—$150; and Secretarial—$50. The engagement letter advises that "Air travel will be made by first

class or business class as available. Automobile travel will be charged at $ .45 per mile." In contrast, the IRS mileage is $ .30 and the vast majority of business travelers use coach.

 While plaintiff may contract with any expert of plaintiff's choice and, by agreement, that expert may charge unusually high rates for services, the discovery process will not automatically tax such unreasonable fees upon the defendant.

I find that the $3,000 fee for a one-half day deposition required by Dr. Teitelbaum is not "reasonable" as contemplated by the Federal Rules of Civil Procedure, the case law interpreting that term, nor the evidence provided to the court. Defendant Monahan will be ordered to compensate plaintiff for the deposition of Dr. Teitelbaum in the amount of $1,500.

**IT IS ORDERED** that defendant's Motion to Compel (# 111) is denied in part and granted in part as follows:

1. To the extent the motion requires an order compelling the attendance of Dr. Teitelbaum at his deposition, that part of the motion is denied as moot based on plaintiffs' representation that Dr. Teitelbaum will appear at his deposition as scheduled for October 5, 1995 between the hours of 1:00 p.m. and 5:00 p.m.;

2. That part of the motion requesting a determination regarding the reasonableness of Dr. Teitelbaum's fees is granted;

3. The court finds that a reasonable fee for the deposition of Dr. Teitelbaum is $1,500, which is the amount defendant is to compensate plaintiff for said deposition.