Brew v. Ferraro                          CV-95-615-JD  09/01/98
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Mary J. Brew

         v.                              Civil No. 95-615-JD

Thomas Ferraro, M.D., et al.


                              O R D E R


     The plaintiff, Mary J. Brew, brought this action against the

defendants, Dr. Thomas Ferraro, Dr. Guy Leadbetter, and Concord

Urology, P.A., based on claims of, inter alia, medical

malpractice and intentional infliction of emotional distress.

Before the court is the plaintiff's motion for a protective order

(document no. 44), which includes requests for the following:

(1) an order requiring the defendants to pay the cost of

preparing one of the plaintiff's experts for the continuation of

his deposition; (2) a cap on the witness fees she must pay for

deposing three experts retained by the defendants; and (3) an

award of her attorney's fees and costs in relation to the motion.


                             Background

     This case arises out of operations performed on the

plaintiff's urinary tract in 1963 and 1964, when she was a child,

and the sequellae.  The plaintiff has asserted claims for, inter

alia, medical malpractice and intentional infliction of emotional

distress.  All parties have retained experts to provide opinion testimony on issues relating to urology or psychiatry.

The plaintiff has undertaken to depose each of the defendants' experts, and each expert has demanded that the plaintiff pay hourly fees for deposition time.  In addition, two of the plaintiff's treating urologists, Drs. Anderson and Kwart, have been deposed as fact witnesses in this action.  The defendants and the plaintiff have agreed to divide the responsibility for paying the fees for deposition time charged by the treating physicians.

After completing the depositions of all but one of the defendants' experts, the plaintiff filed a motion for a protective order.  The plaintiff asserts that she has no duty to pay more than $300 per hour for three of the experts (urologists and a psychiatrist) retained by the defendants.  The defendants have opposed the motion.

## Discussion

Federal Rule of Civil Procedure 26(c) provides that "[u]pon motion by a party . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from . . . undue burden or expense . . . ."  The party seeking a protective order must certify that he or she has

2

"in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c). The movant has the burden of showing that good cause exists for issuance of a protective order. See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789-90 (1st Cir. 1988).[1]

Federal Rule of Civil Procedure 26(b)(4)(C)(i) places a financial burden of deposing a testifying expert on the party that conducts the deposition. The rule provides, in pertinent part:

> Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision . . . .

Fed. R. Civ. P. 26(b)(4)(C)(i) (emphasis added).

Citing this rule, the plaintiff argues that the defendants should cover the time she agreed to pay to prepare her expert psychiatrist, Dr. Bursztajn, for the continuation of his deposition. Dr. Bursztajn's fee schedule states that he is to be paid up front for three hours of deposition preparation time, at

---

[1]As a preliminary matter, the defendants argue that the plaintiff did not make a good faith effort to resolve the dispute before filing her motion. The plaintiff's counsel has certified, however, that attempts were made to resolve the matter, and the correspondence provided to the court substantiates that such efforts occurred.

3

$300 per hour, for every hour of deposition testimony. The first part of Dr. Bursztajn's deposition ended two hours after it began in April 1998 because he had an engagement, and it was scheduled to conclude in July 1998. The plaintiff paid the preparation costs for the first part and requests an order requiring the defendants to pay the costs for the conclusion of the deposition.

Courts have generally found that the party taking the deposition is not required by Rule 26(b)(4)(C)(i) to pay for preparation time. See S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist., 154 F.R.D. 212, 214 (E.D. Wis. 1994). The rationale is that deposition preparation time is in part trial preparation for the party that retained the expert. See Rhee v. Witco Chem. Corp., 126 F.R.D. 45, 47 (N.D. Ill. 1989) ("An expert's deposition is in part a dress rehearsal for his testimony at trial and thus his preparation is part of trial preparation. One party need not pay for the other's trial preparation.").

While there may be an exception to the general rule for complex cases if repeated delays caused by the party taking the deposition have resulted in excessive preparation costs, see id., the circumstances here do not warrant a shifting of the costs. The plaintiff's obligation to pay preparation costs is set forth in a fee schedule that is likely to have little connection to the

4

actual preparation time required for the continuation of Dr. Bursztajn's deposition. Furthermore, the evidence indicates that the plaintiff and the expert bear at least partial responsibility for the delay. The plaintiff told the defendants that Dr. Bursztajn would be available for approximately two to three hours in April 1998. The deposition ended after only two hours, depriving the defendants of an additional hour. The defendants' uncontested averment is that Dr. Bursztajn's scheduling conflicts, not their own, have caused months to elapse before the conclusion of his deposition. The burden of preparing Dr. Bursztajn for the completion of his deposition should therefore be borne by the plaintiff, the party who accepted his fee schedule.

The plaintiff has moved for a protective order as to the deposition fees of Drs. Pitman, Hensle, and Retik, because she asserts that their fees are unreasonable. Dr. Pitman charged $350 per hour, plus a $100 per hour surcharge, while Drs. Hensle and Retik have each demanded $1,000 per hour. The depositions of Drs. Pitman and Hensle occurred before the motion was filed.

The defendants challenge the timeliness of the motion as to the depositions of Drs. Pitman and Hensle. Citing <u>Ellis v. United Airlines, Inc.</u>, 73 F.3d 999, 1011 (10th Cir. 1991), the defendants argue that the court should exercise its discretion to

5

find that the motion is untimely.  In <u>Ellis</u>, the Tenth Circuit upheld an order finding a motion on fees to be untimely <u>after final judgment was entered</u>, which is plainly not the case here. A motion relating to expert witness fees may be granted after the depositions at issue have occurred.  <u>See, e.g.</u>, <u>Goldwater v. Postmaster General</u>, 136 F.R.D. 337, 339-40 (D. Conn. 1991).  The motion at issue is therefore timely as to all three experts.[2]

In requiring the plaintiff to pay reasonable fees under Rule 26(b)(4)(C)(i):

> The ultimate goal must be to calibrate the balance so that [the defendants] will not be unduly hampered in [their] efforts to attract competent experts, while at the same time, an inquiring [plaintiff] will not be unfairly burdened by excessive ransoms which produce windfalls for the . . . experts.

<u>Anthony v. Abbott Labs.</u>, 106 F.R.D. 461, 465 (D.R.I. 1985).

---

[2]The defendants suggest that the plaintiff should be estopped from challenging the fees for Drs. Pitman and Hensle because she took their depositions without objection.  A traditional element of an estoppel claim, however, is detrimental reliance, <u>see</u> <u>Lyng v. Payne</u>, 476 U.S. 926, 935 (1986), and the defendants have not made the necessary showing in this case. They have neither argued that they are bound to pay the fees charged, nor argued, if they are so bound, that earlier notice would have made a difference.  The defendants' liability for fees, if any, is based on contracts signed before the experts were disclosed to the plaintiff.  The motion could not have been filed early enough to affect any fee schedule established when the retainer agreements were signed.  Nor is there evidence that the experts would have compromised their fees with advance notice.  Therefore, the plaintiff is not estopped from challenging the fees of Drs. Pitman and Hensle.

Since the plaintiff had no involvement in the selection of the defendants' experts or in negotiations on their fee schedules, her obligation is to pay only a "reasonable" fee, not whatever rate might be acceptable to the contracting parties. See Bowan v. Monahan, 163 F.R.D. 571, 573 (D. Neb. 1995) ("While plaintiff may contract with any expert of plaintiff's choice and, by agreement, that expert may charge unusually high rates for services, the discovery process will not automatically tax such unreasonable fees upon defendant.").

A decision on the reasonableness of an expert's fee is committed to the discretion of the district court. Courts have cited a number of factors that may be relevant. Some of those factors include:

1. The witness's area of expertise;
2. The education and training required;
3. The prevailing rates of other comparably respected experts;
4. The cost of living in the area where the expert maintains his or her office;
5. The fee charged by the expert to the party who retained him or her;
6. The fees traditionally charged by the expert on related matters; and
7. Any other factors likely to be of assistance to the court.

See Jochims v. Isuzu Motors, Ltd., 141 F.R.D. 493, 496-97 (S.D. Iowa 1992); Goldwater, 136 F.R.D. at 340. An additional factor often cited, the nature, quality, and complexity of the witness's

discovery responses, see Goldwater, 136 F.R.D. at 340, is not at issue, since the parties have provided no evidence on it.[3]

The plaintiff argues that the rate charged by Dr. Pitman, a psychiatrist, is unreasonable, and should be limited to $300 per hour. Dr. Pitman's traditional rate is $350 per hour. He charged the plaintiff this rate plus a surcharge of $100 per hour (making his effective rate $450 per hour). In his deposition, Dr. Pitman testified that the surcharge covers the fifteen to twenty minutes per hour of deposition time that he spends reviewing and correcting the transcript, billed at $350 per hour.

Rule 26(b)(4)(C)(i) does not specify whether an expert may charge for reviewing and correcting the transcript. Logically, since a duty of responding truthfully to discovery requests is fulfilled by making sure that the transcript is accurate, such time falls within the rubric of "time spent in responding to discovery," Fed. R. Civ. P. 26(b)(4)(C)(i). The fee for such

---

[3]The plaintiff provided the court with a copy of Dr. Retik's expert report. The plaintiff, without indicating whether an attempt to obtain a more complete report was ever made, contends for the first time in her motion that the report is incomplete. While the report is not detailed, the disclosure requirements applicable in this case are relatively minimal. In any event, without comparative evidence on the quality of other reports, and without evidence on Dr. Retik's responses to deposition questions, the court cannot draw inferences regarding the reasonableness of the rate charged based on the level of detail in the report.

time is therefore the responsibility of the party that took the deposition.  See id.

The plaintiff has not shown that Dr. Pitman's practice of charging such time up front is improper; indeed, each of her experts demanded pre-payment for their deposition time.  The plaintiff has also not suggested that the pace of questions was slower than average.  Nor has she challenged Dr. Pitman's estimate that fifteen to twenty minutes of review are required for each hour of a deposition.  Accordingly, the court concludes that the $100 surcharge is permissible pursuant to Fed. R. Civ. P. 26(b)(4)(C).

The plaintiff contends that Dr. Pitman's traditional rate, $350 per hour, is excessive in any case.  Dr. Pitman's rate is higher than the $300 hourly rate paid by the defendants for deposing Dr. Bursztajn, the plaintiff's expert, and it is also higher than the $250 hourly rates accepted by courts for psychiatrists in other recent cases.  Notably, two of those cases involved psychiatrists in New York City, where the cost of living is among the highest in the country.  See Mathis v. NYNEX, 165 F.R.D. 23, 26 (E.D.N.Y. 1996); see also Magee v. Paul Revere Life Ins. Co., 172 F.R.D. 627, 645 (E.D.N.Y. 1997).  Dr. Pitman's office is in Manchester, New Hampshire, while Dr. Bursztajn's is in Cambridge, Massachusetts.

9

**Table 1:  Psychiatry Expert Rates in Other Cases**

| Case Name & Office Location of Expert | Prevailing Rates of Similar Experts (Per Hour) | Court-Ordered Rate for Deposition (Per Hour) | Rate Charged by Same Expert for Similar Services (Per Hour) |
|---|---|---|---|
| <u>Magee</u><br>New York City | $100 to $250 | $250 | $250 |
| <u>Mathis</u><br>New York City | $300 | $250 | $250 |
| <u>Goldwater</u><br>Hartford, CT | $200 | $200 | $150<br>(rate charged by same expert four years earlier) |

While the cited cases provide guidance, they do not cap Dr. Pitman's rate.  There are factors in this case that support a finding that his rate is reasonable.

Dr. Pitman, like the plaintiff's expert, Dr. Bursztajn, is a member of the faculty of Harvard Medical School.  Dr. Pitman is also an internationally-recognized expert in post traumatic stress disorder, which is relevant to the plaintiff's claim of emotional distress.  Dr. Pitman's expertise is not matched by the psychiatrists whose rates were reduced in the other cases.

Although Dr. Pitman's rate of $350 per hour exceeded the rate charged to the defendants by Dr. Bursztajn, the $50 per hour discrepancy is not significant, especially given that the Pitman

deposition lasted only 2.5 hours.[4]  While the cost of living in

Cambridge may be higher than Manchester, that factor is not

entitled to significant weight.  See Jochims, 141 F.R.D. at 496

("The court does not believe that the cost of living in a

particular geographic area is directly relevant to a reasonable

fee and, in any event, this factor is frequently, at least

indirectly, calibrated into prevailing market rates.").  Dr.

Pitman charged the party that retained him $350 per hour for

similar services, and that fact supports a finding that requiring

the same rate for deposition testimony (and review of the

transcript) is reasonable.

With respect to other factors bearing on whether the

plaintiff has carried her burden, the court notes that there is

no suggestion that the plaintiff is indigent or otherwise unable

to pay.  The deponent's office, located in this district within

60 miles of the office of plaintiff's counsel, further reduced

the financial impact of the deposition on the plaintiff.

Therefore, since the plaintiff has failed to show good cause for

a protective order, the court finds that Dr. Pitman may charge

_____

[4]The discrepancy between the rates may be explained by Dr.
Bursztajn's billing practices.  For each hour of deposition time,
Dr. Bursztajn required pre-payment of three hours of preparation
time, or an additional $900 per hour of actual deposition time.

$350 per hour of deposition time plus a $100 per hour surcharge.[5]

The next issue is the reasonableness of the $1,000 hourly rate for the deposition testimony of Drs. Retik and Hensle. This rate is strikingly high, like the rates charged by all but one of the urologists in this case. With the exception of Dr. Schmidt, who charged approximately $333 per hour, the remaining urologists charged at least $500 per hour. The median rate for urology experts in the case is $600 per hour, and the average rate is almost $700 per hour.

These rates are well above the rates set for other medical specialists testifying in recent matters. See, e.g., Hose v. Chicago & North Western Trans. Co., 154 F.R.D. 222, 227 (S.D. Iowa 1994) (limiting Nebraska neurologist, a treating physician, to $400 per hour); Dominguez v. Syntex Labs., Inc., 149 F.R.D. 166, 170 (S.D. Ind. 1993) (limiting neurologist to $341.50 per hour); see also Bowan, 163 F.R.D. at 574 (limiting medical toxicologist to approximately $375 per hour).

_____

[5]Even if the court had reduced the rate to $300 per hour, the plaintiff would have remained liable for the $100 surcharge, covering the 15 to 20 minutes per hour of deposition time that Dr. Pitman typically requires to review and correct the transcript. A protective order issued under such circumstances would have reduced Dr. Pitman's effective rate to $400 per hour, for 2.5 hours, resulting in a savings to the plaintiff of only $125.

12

### Table 2: Medical Expert Rates in Recent Cases

| Case Name & Expertise of Witness | Prevailing Rates of Similar Experts (Per Hour) | Court-Ordered Rate for Deposition (Per Hour) | Rate Charged by Same Expert for Similar Services (Per Hour) |
|---|---|---|---|
| Hose neurologist | $375 to $429 | $400 | $110 to $800 |
| Dominguez neurologist | $120 to $300 | $341.50 | $94 to $460 |

While such cases provide guidance, they cannot set a cap on rates for the two pediatric urologists at issue. The plaintiff has provided no evidence that the fees set in any other cases are applicable to urologists. Moreover, the plaintiff did not provide any evidence on the prevailing rates for urologists in other contexts. Accordingly, the court must examine the reasonableness of the challenged fees based on the data in this case, as set forth below.

### Table 3.1: Brew Urology Expert Rates

| Urology Experts | Office Location | Rate Charged for Deposition (Per Hour) | Rate Charged for Similar Services (Per Hour) |
|---|---|---|---|
| Davis | Manhattan | $500+ | $350 to $725 |
| Schmidt | Denver | $333+ | $250 to $300 |
| Murphy | Philadelphia | $600 | $300 |
| Retik (Pediatric Urology) | Boston Area | $1,000 | no information provided |

| Urology Experts | Office Location | Rate Charged for Deposition (Per Hour) | Rate Charged for Similar Services (Per Hour) |
|---|---|---|---|
| Davis | Manhattan | $500+ | $350 to $725 |
| Hensle (Pediatric Urology) | Manhattan | $1,000 | $500 to $1,250 |

**Table 3.2:  <u>Brew</u> Urology Fact Witness Rates**

| Urology Fact Witnesses | Office Location | Rate Charged for Deposition (Per Hour) |
|---|---|---|
| Anderson | North Carolina | $500 |
| Kwart | District of Columbia | $750 |

The credentials of Drs. Hensle and Retik are impeccable. Both doctors have decades of experience in pediatric urology, bearing on the plaintiff's claims of medical malpractice relating to surgery when she was a child in the early 1960s.  Dr. Hensle, based in Manhattan, is on the faculty of the Columbia University College of Physician and Surgeons and is an adjunct professor of urology at the Mt. Sinai School of Medicine in New York.  He is the director of the Pediatric Urology Division of Babies and Children's Hospital, Columbia-Presbyterian Medical Center, in New York City.  Similarly, Dr. Retik is chief of the Division of Urology, Children's Hospital Medical Center in Boston, and is on the faculty of Harvard Medical School.  The evidence suggests that the doctors' subspecialty and credentials in pediatric

14

urology are unique in the case.

Nevertheless, their rates can be fairly characterized as exorbitant. Both specialists reside in areas known to have a high cost of living, but so do several other deponents who charged lesser rates, including Dr. Davis (Manhattan), Dr. Bursztajn (Boston area), and Dr. Kwart (Washington, DC). The cost of living is a factor not entitled to great weight in this case. See Jochims, 141 F.R.D. at 496.

Furthermore, the evidence on the rates charged by Dr. Hensle for similar services suggests that the rate he billed to the plaintiff is unreasonable. (No information has been provided regarding Dr. Retik's charges for similar services.) For services provided to the defendants, Dr. Hensle charged from $500 per hour (reviewing charts and preparing a report) to approximately $1250 per hour (trial). Notably, to prepare his expert report, Dr. Hensle charged the defendants only $500 per hour. In other words, he formulated and summarized his opinions in writing at half the rate he charged for his deposition testimony. The defendants have offered no explanation for this disparity in rates.

In light of the foregoing, the $1,000 hourly rate charged by Drs. Retik and Hensle should be reduced to $750 per hour. Since the evidence shows that the factors applicable to both pediatric

urologists are comparable, the same hourly rate shall apply to both of them.

Logically, witnesses like Drs. Retik and Hensle who provide expert opinions should be entitled to a premium for their testimony because they bring their expertise to bear on an issue and put their reputations on the line. Accordingly, the reduced rate is at the upper end of the rates accepted by the plaintiff and the defendants alike for the deposition testimony of Drs. Anderson and Kwart ($500 per hour to $750 per hour), witnesses not asked to provide opinions.

A finding that a $750 hourly rate is reasonable is supported by a comparison with the prevailing rates charged by all of the urologists deposed by the parties, including the plaintiff's experts. The reduced rate approximates the average of such rates. Moreover, the reduced rate of $750 per hour is at the lower end of the rates charged for similar services by Dr. Hensle (which range from $500 per hour for the report to approximately $1250 per hour for trial).

Relevant factors, such as the deponents' unique qualifications, the brevity of the depositions (less than 3 hours each), and the proximity of the witnesses's offices to the plaintiff's office, further support a finding that the reduced rate, while still high, is reasonable under the facts of this case.

16

Therefore the plaintiff's liability for the deposition time of Drs. Hensle and Retik shall be limited to $750 per hour.

The final matter before the court is the plaintiff's request for an award of her attorney's fees on her partially successful motion. Rule 37(a)(4)(C) provides that if a motion for a protective order is granted in part and denied in part, the court "may . . . apportion the reasonable expenses incurred . . . among the parties . . . in a just manner." See also Fed. R. Civ. P. 26(c) (Rule 37(a)(4) applies to motions for protective orders). In light of the limited relief granted, the court finds that shifting the responsibility for the plaintiff's attorney's fees or costs would not be just.

## Conclusion

For the reasons stated above, the plaintiff's motion for a protective order (document no. 44) is granted in part and denied in part. The plaintiff is ordered to pay Drs. Hensle and Retik only $750 per hour for their deposition time. Each party shall bear its own attorneys' fees and costs related to this motion.

It is unfortunate that judicial resources have had to be

17

expended on this issue.  In the future, the court expects counsel to resolve a dispute of this nature.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

September 1, 1998

cc:   Robert A. Backus, Esquire
      John Traficonte, Esquire
      Michael R. Callahan, Esquire
      John E. Friberg, Esquire
      Ronald L. Snow, Esquire
      William D. Pandolph, Esquire